# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 6, 2003

## STATE OF TENNESSEE v. MARCUS ANTWONE GILLARD

### Direct Appeal from the Criminal Court for Madison County
### No. 01-621    Donald H. Allen, Judge

------------

### No. W2002-01189-CCA-R3-CD  - Filed October 21, 2003

------------

The defendant was convicted of aggravated robbery, facilitating aggravated kidnapping, and aggravated burglary.  He now appeals these convictions contending that the (1) evidence was not sufficient to support the convictions, (2) trial court erred in refusing to dismiss the charge of aggravated kidnapping or in refusing to merge the charge of aggravated kidnapping with his aggravated robbery charge, (3) trial court erred by denying him his right to effective cross-examination by stating that questions regarding the prior inconsistent statements of the victim would allow the admission of more damaging testimony against the defendant, and (4) trial court erred in sentencing.  We hold that the trial court erred in applying enhancement factor four; however, the error was harmless.  We affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Didi Christie, Brownsville, Tennessee (on appeal); George Morton Googe, District Public Defender; and Vanessa D. King, Assistant Public Defender (at trial), for the appellant, Marcus Antwone Gillard.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Marcus Antwone Gillard, was convicted by a jury on February 19, 2002, of aggravated robbery, facilitating aggravated kidnapping, and aggravated burglary. The defendant was sentenced to twelve years for aggravated robbery.  The trial court sentenced the defendant to six years for facilitating aggravated kidnapping and six years for aggravated burglary, to be served concurrently with each other and consecutively to his sentence for aggravated robbery for an effective sentence of eighteen years.  The defendant appeals his convictions and contends that the (1) evidence was not sufficient to support the convictions, (2)

trial court erred in refusing to dismiss the charge of aggravated kidnapping or in refusing to merge the charge of aggravated kidnapping with his aggravated robbery charge[1], (3) trial court erred by denying him his right to effective cross-examination by stating that questions regarding the prior inconsistent statements of the victim would allow the admission of more damaging testimony against the defendant, and (4) trial court erred in sentencing.

## Facts

During the late evening hours of November 14, 2000, Frederick Pearson left his home to go to the store. His wife, Maranda Pearson, and fourteen-year-old sister-in-law, Alexis Reed, stayed at the house while Mr. Pearson was gone. Upon returning to the house, Mr. Pearson was confronted by two armed men demanding money. Mrs. Pearson heard noise outside and looked out the door. She opened the door and saw her husband standing there with the two armed men. One man had a gun pointed at her husband's head, and the other had a gun at his side. As Mrs. Pearson tried to communicate to her sister, Miss Reed, to call the police, one of the men, later identified as Frederickas Neal, ordered Mrs. Pearson and Miss Reed to get down on the floor.

While Neal held Ms. Pearson and Miss Reed at gunpoint, the defendant demanded money from Mr. Pearson. The defendant took $140 from the bedroom dresser. The defendant then ordered Mr. Pearson to get down on his knees, pointed a gun at his head, and demanded more money. In an effort to get the men out of his house, Mr. Pearson told the defendant that he had more money at his father's house. However, his plan did not work. The defendant left with Mr. Pearson to get more money while the other man, Neal, stayed at the house holding Mrs. Pearson and Miss Reed at gunpoint on the floor. As the defendant and Mr. Pearson were driving to his father's house, Mr. Pearson asked the defendant what would happen if he did not have any more money at his father's house. The defendant said that he would have to kill him. The defendant became upset when Mr. Pearson called him by his street name, "Little G." The defendant instructed Mr. Pearson to turn the vehicle around and head back to the house. Approximately thirty minutes to one hour later, they returned to Mr. Pearson's home where he gave the defendant an additional $1000. The defendant told Mr. Pearson that if he ever "hear[d] anything about [the] situation," he would "come back and get [him] and [his] family." The two men then left with the money.

The Pearsons did not report the incident to the police that night for fear of retaliation by the men. Mrs. Pearson and her sister reported the incident to the police the next morning. Later that day, Mr. Pearson also spoke with the police. They all gave statements to the investigator.

The defendant was later charged and found guilty of aggravated robbery, facilitating aggravated kidnapping, and aggravated burglary. One of the central issues at trial was the identification of the defendant by the victims. Mrs. Pearson testified that she did not immediately recognize the men. She stated that the defendant was wearing a bandana that

---

[1] In the statement of issues presented section of the defendant's brief and in the heading used by the defendant, he contends that the charge should have been merged with the aggravated burglary charge. However, his argument is that it should have been merged with the aggravated robbery charge.

covered the middle portion of his face. He also had on a hood and a baseball cap. However, she was able to see his eyes and the lower portion of his face. Mrs. Pearson testified that she knew the defendant's mother and that he resembled his mother. In court, she identified the defendant as the man who wore the bandana that night.

Miss Reed testified that, before the incident, she knew the defendant from the neighborhood. She thought that she recognized him that night from his eyes. In a photo lineup the day after the incident, she identified the defendant as the man wearing the bandana that night. In court, Miss Reed again identified the defendant as the man involved in the incident on November 14.

Mr. Pearson testified that he recognized the defendant immediately on the night of the incident. He stated that although the defendant was wearing some type of a scarf around the mid-portion of his face, he recognized him by his eyes and cheekbones. He also recognized the defendant's voice. Mr. Pearson testified that after he returned to the house with the defendant, his bandana or scarf fell from his face. At that time, he saw the defendant's whole face. He knew the defendant from the community before the incident. Mr. Pearson knew the defendant's mother and older brother and had seen the defendant three weeks prior to the robbery. He identified the defendant in a photo lineup shown to him the day after the incident. Mr. Pearson also identified the defendant in court as the perpetrator.

The defense revolved around testimony by two witnesses that the defendant was in Illinois on the night in question. Dexter Harvey testified that on November 10, 2000, he picked up the defendant in Jackson, Tennessee and drove him to Aurora, Illinois. Mr. Harvey stated that the defendant stayed with him at his home for approximately one week. He said that he was with the defendant in Illinois on November 14. Tiffany Harvey, Mr. Harvey's estranged wife, testified that she saw the defendant at her home in Illinois the week before Thanksgiving. She said that she did not know who he was but that she was sure it was the defendant at her home.

At the conclusion of the trial, the defendant was found guilty of aggravated robbery, facilitating aggravated kidnapping, and aggravated robbery and was given an effective sentence of eighteen years.

## Analysis

### A. Sufficiency of Evidence

The defendant argues on appeal that the evidence was insufficient to identify him as the person who committed these offenses. When an appellant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Elkins, 102 S.W.3d

578, 581 (Tenn. 2003). This Court will not reweigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

Maranda Pearson testified that although she did not immediately recognize the perpetrator, she later realized that he was the defendant. While the defendant was wearing a bandana of some sort around the mid-portion of his face, his eyes and the lower portion of his face were visible. In court, Ms. Pearson identified the defendant as the perpetrator. Ms. Pearson knew the defendant from the neighborhood prior to this incident.

Alexis Reed testified that she recognized the defendant that night from his eyes. The day after the incident, she identified the defendant as the perpetrator in a photo lineup. In court, she also identified the defendant as being responsible for the crimes. Miss Reed knew the defendant prior to the incident.

Probably the most convincing evidence of identification came from Frederick Pearson. Mr. Pearson testified that he immediately recognized the defendant on the night of the incident. He stated that although the defendant was wearing some type of a scarf around the mid-portion of his face, he recognized him by his eyes and cheekbones. He also recognized the defendant's voice. Mr. Pearson testified that after he returned to the house with the defendant, his bandana or scarf fell from his face. At that time, he saw the defendant's entire face. He knew the defendant from the community before the incident. Mr. Pearson knew the defendant's mother and older brother and had seen the defendant three weeks prior to the robbery. He identified the defendant in a photo lineup shown to him the day after the incident. Mr. Pearson also identified the defendant in court as the perpetrator.

While the defendant did provide alibi evidence that he was in Illinois on the night of the incident, the jury obviously chose not to give credit to this testimony by finding him guilty of all three offenses. After viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found beyond a reasonable doubt that the defendant was the person responsible for these crimes.

B. Merger or Dismissal of Kidnapping Charge

The defendant argues that the aggravated kidnapping charge should have been dismissed

or the facilitating aggravated kidnapping charge merged with the aggravated robbery conviction, because the kidnapping was incidental to the robbery. The Tennessee Supreme Court has recognized that a separate kidnapping conviction may violate due process when the kidnapping is incidental to an accompanying felony and not "significant enough, in and of itself, to warrant independent prosecution." State v. Anthony, 817 S.W.2d 299, 306 (Tenn. 1991). It must first be determined whether the movement or confinement used was beyond that necessary to commit the accompanying felony. State v. Dixon, 957 S.W.2d 532, 535 (Tenn. 1997) (citing Anthony, 817 S.W.2d at 306). "If so, the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." Id.

Holding the two women at gunpoint for thirty minutes to an hour after the defendant had left with Mr. Pearson was not necessary to commit the robbery. The confinement of the women at gunpoint for up to an hour clearly created a significant danger and an increased risk of harm. Additionally, the defendant states in his brief that the women were held "to prevent detection." We agree. This obviously satisfies the second prong of the inquiry. The trial court did not err on this issue.

### C. Denial of Effective Cross Examination

The defendant asserts that he was denied his right to effective cross-examination of Frederick Pearson. In an effort to impeach Mr. Pearson, defendant's trial counsel sought to elicit testimony regarding a shooting incident that occurred after the offenses in this case. During a bench conference, the trial court warned counsel that the line of questioning regarding the other incident might open the door to damaging testimony. The trial court warned counsel that she did not "want to do anything to hurt [her] client." The trial court told her on two separate occasions that continuing the line of questioning was her decision. The trial court told counsel to "do what [she thought was] best." Trial counsel stated to the court that "[she thought] the other shooting would be more harmful than helpful." Following the bench conference, trial counsel asked no further questions regarding the other incident. Restrictions on a defendant's right to cross-examine a witness for impeachment purposes may violate the defendant's constitutional right of confrontation. State v. Sayles, 49 S.W.3d 275, 279 (Tenn. 2001). However, the trial court did not restrict counsel's right to cross-examine. The court only warned counsel that she might be opening the door to testimony that "may or may not hurt" her client. Counsel then made the decision not to pursue further cross-examination on the subject. The defendant's argument on this issue is without merit.

### D. Sentencing

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). It is this Court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative

showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).

The trial court, on the record, considered the evidence presented at trial and the sentencing hearing, the pre-sentence report, the principles of sentencing under the Criminal Sentencing Reform Act, the nature and characteristics of the criminal conduct involved in this case, the evidence and arguments concerning mitigating and enhancing factors, and the defendant's amenability to rehabilitation. The defendant did not make a statement at the sentencing hearing.

On appeal, the defendant argues that the trial court erred in applying enhancement factors four and nine. See Tenn. Code Ann. § 40-35-114(4) (victim's vulnerability because of age), (9) (possessed or employed a firearm or other deadly weapon).[2] The State concedes that the trial court should not have applied factor four, and we agree. Enhancement factor four can be applied "if the circumstances show that the victim, because of his [or her] age or physical or mental condition, was in fact 'particularly vulnerable,' i.e., incapable of resisting, summoning help, or testifying against the perpetrator." State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). Vulnerability of the victim "relates more to the natural physical and mental limitations of the victim than merely to the victim's age." Id.; see also State v. Hayes, 899 S.W.2d 305 (Tenn. Crim. App. 1994) (fact that the victim was twelve years old was not sufficient to support application of factor four). The trial court applied factor four based solely on the fact that the victim, Miss Reed, was only fourteen years old. There was no evidence presented that she was "particularly vulnerable." Factor four was applied only to the facilitating aggravated kidnapping charge. The trial court erred in its application of factor four; however, the error was harmless. The wrongful application of one or more enhancement factors by the trial court does not necessarily lead to a reduction in the length of the sentence. State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000). This determination requires that we review the evidence supporting any remaining enhancement factors, as well as the evidence supporting any mitigating factors. State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002). In addition to the "vulnerability" factor, the court properly applied seven other enhancement factors to the charge. The evidence fully supported the trial court's enhancement of the sentence from three years to six years.

The defendant also argues that the trial court erred in applying enhancement factor nine, because possession of a firearm was a necessary element of the offenses charged. The trial court applied factor nine only to the charge of aggravated burglary. Use or possession of a deadly weapon is not necessary to commit the offense of aggravated burglary. See Tenn. Code Ann. § 39-14-403. "All that is required is the entry of a habitation with the intent to commit a felony." State v. Jeffrey Smith, No. E2002-01147-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 226, at *17 (Tenn. Crim. App., at Knoxville, Mar. 18, 2003). This factor was properly applied.

---

[2] Effective July 2002, the legislature amended Tennessee Code Annotated section 40-35-114 by adding "terrorism" as an enhancement factor. 2002 Tenn. Pub. Acts, ch. 849, § 2(c). "Terrorism" is listed as factor (1), thus renumbering the previous factors as (2) through (23). See Tenn. Code Ann. § 40-35-114 (Supp. 2002). Our opinion refers to the enhancement factors as they existed at the time of sentencing as specified in Tennessee Code Annotated section 40-35-114 (1997).

The defendant next asserts that the trial court erred by not applying the one mitigating factor that was argued at sentencing. The defendant argues that mitigating factor six should have been applied, because he was only eighteen years old at the time the offenses were committed. See Tenn. Code Ann. § 40-35-113(6) (youthful offender). Although the State did not address this issue in its brief, we agree with the trial court. "In determining whether this factor is to be applied, courts should consider the concept of youth in context, i.e., the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993); see also State v. John Leslie George, No. M2001-01213-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 86, at *14 (Tenn. Crim. App., at Nashville, Feb. 3, 2003) (court declined to apply factor to defendant who was one day shy of his eighteenth birthday). In State v. Harley B. Upchurch, this Court held that the "[d]efendant's extensive involvement with the criminal and juvenile justice systems negate[d]" the application of mitigating factor six. No. M2001-03170-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 766, at *11 (Tenn. Crim. App., at Nashville, Sept. 9, 2002). Although the defendant was a young man, he had an extensive criminal history. The defendant has been in and out of the court system since he was eight years old. In the ten years previous to the current charges, he had been adjudicated for at least a dozen offenses including several assaults, aggravated burglary, and weapons charges. We agree with the trial court that no mitigating factors should apply.

The defendant argues that the trial court erred in imposing consecutive sentencing in this case. Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of following statutory criteria apply:

(1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) [t]he defendant is an offender whose record of criminal activity is extensive;

(3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) [t]he defendant is sentenced for an offense committed while on probation; or

(7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The defendant committed was first adjudicated delinquent at eight years of age. He was back in court at age eleven for simple assault. When the defendant was twelve, he was adjudicated delinquent for theft of property and aggravated burglary. While on probation for those crimes, he committed two more assaults. He committed an additional assault a few months later. At age fourteen, he was adjudicated delinquent for possession of illegal firearms. The defendant was adjudicated delinquent for possession of crack cocaine, evading arrest, and driving while unlicensed at age fifteen. A few months later, he committed aggravated assault and possession of a weapon with intent to go armed. While on probation for that offense, he committed the delinquent acts of driving without a license, failure to yield to blue lights, and underage possession of alcohol and tobacco. After the defendant turned eighteen, he was convicted of simple assault, resisting arrest, evading arrest, and criminal impersonation. The current offenses were committed while he was on probation for the offenses committed after he turned eighteen. There is no question that factor six of the consecutive sentencing criteria has been met. See Tenn. Code Ann. § 40-35-115(b)(6) (committed offense while on probation). It is also clear from the evidence that the defendant has an extensive history of criminal activity. Consecutive sentencing was also appropriate under factor two. See Tenn. Code Ann. § 40-35-115(b)(2) (extensive record of criminal activity).

The trial court also found that the defendant was a dangerous offender. If the court concludes the defendant is a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4), it must make two further determinations in addition to applying general sentencing principles. State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). First, it must find an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). Due to the defendant's history of continuous criminal behavior, we agree with the trial court that the sentence imposed is necessary to protect the public. Under any of the consecutive sentencing bases, the sentence must be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." See Tenn. Code Ann. §§ 40-35-102(1), -103(2); State v. Lane, 3 S.W.3d 456, 460 (Tenn. 1999). Considering all of the evidence, we find that the sentence imposed is reasonably related to the severity of the offenses and justly deserved.

We hold that the trial court erred in its application of enhancement factor four; however, the error was harmless. We affirm the judgment of the trial court in all other respects.

_____
JOHN EVERETT WILLIAMS, JUDGE