# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 1, 2005 Session

## STATE OF TENNESSEE v. NORRIS RAY

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 02-02917, 02-02918, 02-04286    Joseph B. Dailey, Judge**

---

**No. W2004-01247-CCA-R3-CD  - Filed June 27, 2005**

---

Following a jury trial, Defendant, Norris Ray, was convicted of one count of unlawful possession of a handgun; one count of first degree felony murder; and one count of especially aggravated kidnapping. Defendant was sentenced to life with the possibility of parole on the felony murder conviction. The trial court sentenced Defendant as a Range II, multiple offender, to forty years for the especially aggravated kidnapping conviction and as a Range II, multiple offender, to four years for the felony possession of a handgun conviction. The trial court ordered Defendant's sentences to be served consecutively for an effective sentence of life plus forty-four years. On appeal, Defendant argues (1) that the evidence is insufficient to identify him as the perpetrator of the offenses; (2) that the trial court erred by not allowing the impeachment of the testimony of the victim of especially aggravated kidnapping with evidence of the victim's misdemeanor drug convictions; and (3) that the trial court erred in determining the length of Defendant's sentences and in imposing consecutive sentencing. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which J.C. MCLIN, J., joined. James Curwood Witt, Jr., J., concurring in result only.

Marty B. McAfee, Memphis, Tennessee (on appeal); Robert Wilson Jones, District Public Defender; and William Johnson, Assistant Public Defender, Memphis, Tennessee (at trial), for the appellant, Norris Ray.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; Robert Carter, Assistant District Attorney General; and Paul Hagerman, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Kevin Wiseman and his brother, Jesse Windom, owned a car lot in Memphis. Mr. Windom called his brother around 6:00 p.m. on August 7, 2001, after the business was closed, and asked Mr. Wiseman to meet him at the car lot so he could get a set of car keys from Mr. Wiseman. Mr. Wiseman testified that Mr. Windom was driving a 2001 black Lexus. Mr. Wiseman arrived at the car lot and parked on the street. Mr. Windom backed the Lexus into the car lot's fenced parking area.

A white Dodge Stratus with three African-American males in it pulled up to the car lot. One of the men got out of the car and began talking to Mr. Windom. The man waved his hand for the second man to get out of the car. The second man approached Mr. Wiseman with a handgun. The third man remained in the Dodge. He stuck a shotgun out of the car's window and told Mr. Wiseman he would shoot him if Mr. Wiseman attempted to flee. The first man pulled up his shirt to show Mr. Windom that he was armed. Mr. Wiseman later identified Defendant from a photo lineup as the first man who approached Mr. Windom, and Defendant's co-defendant, Nakomis Jones, as the man who approached Mr. Wiseman.

The men demanded the keys to the business office. Mr. Wiseman told Defendant the keys were in his car, but Defendant got into the Lexus instead and started the engine. Mr. Jones pushed Mr. Wiseman toward the Lexus, and told him to get into the trunk. Mr. Wiseman got into the trunk, and the car started moving. Mr. Wiseman heard one of the men ask his brother where the money was, and his brother responded that the police had taken all the money. The man kept repeating his demand, and Mr. Windom kept saying that he did not have any money. After driving for five to ten minutes, Mr. Wiseman heard a gunshot, and his brother said "oh."

Mr. Wiseman then heard one of the men say that he saw the police. The Lexus sped up and made numerous turns. The car stopped, and Mr. Wiseman heard the car's doors open and close. He waited about ten or fifteen minutes and then began pounding on the roof of the trunk. Mr. Wiseman did not know that the Lexus had an emergency release button inside the trunk, but he accidently hit the button with his arm. The trunk popped open, and Mr. Wiseman got out of the trunk. No one was around, and Mr. Wiseman did not see the Dodge Stratus.

Mr. Wiseman said that the car had stopped at the Southwood Apartments which were next door to the Flairwood Apartments. He called Mr. Windom on his cell phone but did not get an answer. Mr. Wiseman caught a ride with a friend back to his business. Before they reached the car lot, however, Mr. Wiseman saw another friend at the intersection of Winchester and Tschulahoma. The friend told Mr. Wiseman that Mr. Windom had been shot and was in an ambulance at the Mapco gas station at the intersection. Mr. Wiseman said that his ordeal lasted about one hour.

On cross-examination, Mr. Wiseman said that he was in the car's trunk between fifteen and thirty minutes. Mr. Wiseman said that Defendant was at the driver's side door when Mr. Jones put him in the trunk so he assumed Defendant was driving the Lexus. Mr. Wiseman said that the only voice he could identify while he was in the trunk was his brother's.

Gary Claxton, a Memphis police officer, was off-duty on August 7, 2001. He was driving west on Winchester in a Nissan Maxima when a black Lexus and a white Dodge Stratus entered the road from an apartment complex and nearly struck his car. Officer Claxton said that the Dodge was following the Lexus, and both cars were being driven erratically. All three cars entered the left turn lane at the intersection of Winchester and Tschulahoma. The Lexus was first in line, followed by the Maxima and then the Dodge. A man jumped out of the rear passenger seat of the Lexus and ran toward a Mapco gas station. Officer Claxton said the man looked "panicked."

The Lexus made a u-turn and drove into the gas station. The light turned green, and the Dodge nearly hit Officer Claxton's car again. Officer Claxton let the Dodge pass him and recorded the car's license plate number. He called the dispatcher to report the incident. Officer Claxton said that he attempted to follow the Dodge and Lexus, but he did not see the cars again after they drove away from the Mapco. When he returned to the gas station, Officer Claxton said that the man who had jumped out of the Lexus was lying on the ground. It was later determined that the Dodge Stratus was registered to Chandra Jones.

Chandra Jones confirmed that she owned the Dodge. She said that she loaned the car to Defendant on August 7, 2001, between 4:30 p.m. and 5:00 p.m. About 6:45 p.m., she called her cell phone which was in the Dodge, and a man named "Geno" answered. Defendant later testified that "Geno's" name was Eugene Pickens. Mr. Pickens told Ms. Jones that Defendant was in the bathroom.

Ms. Jones said that Defendant returned to her apartment after she was asleep. The police called some time after midnight and asked Ms. Jones to step out of her apartment. Ms. Jones went outside, and the police took her to a telephone booth so that she could call Defendant and ask him to come out of the apartment. Ms. Jones said that she did not see Defendant arrested because the police would not take her back home.

Kim Hughes stated that she lives at the Flairwood Apartments. On the evening of August 7, 2001, her daughter and four other little girls were playing outside her apartment. A man, whom Ms. Hughes later identified as Nakomis Jones, approached her apartment around 6:30 or 6:45 p.m. and asked the little girls if he could use the telephone. Ms. Hughes came to the front door, and Mr. Jones told her that he had car trouble. Ms. Hughes told Mr. Jones to come to the back door, and she handed him her cordless telephone through the door. Ms. Hughes said that Mr. Jones kept dialing a couple of numbers and then hanging up. A second man, whom Ms. Hughes later identified as Defendant, walked up from behind the apartment building. Mr. Jones asked him for "brother's" telephone number. Mr. Jones still did not dial the telephone correctly, and Defendant took the telephone from him and placed the call. Someone answered, and Defendant said, "Geno, come and

-3-

get us." Defendant asked Ms. Hughes for the name of the apartment complex. Defendant returned the telephone to Ms. Hughes, and the two men left.

Mr. Jones, however, returned to her apartment less than a minute later, and Ms. Hughes called 911. The police did not respond to her 911 call. Ms. Hughes saw a report of the shooting on the evening news and called Crime Stoppers.

Officer Prentiss Jolly with the Memphis Police Department responded to the dispatcher's call about shots fired at the intersection of Winchester and Tschulahoma. The victim had been transported to the hospital by the time he arrived. The investigating officers received notice while they were at the Mapco station that the victim had died. Officer Jolly interviewed Mr. Wiseman and Officer Claxton. He went to Chandra Jones' apartment and found the white Dodge Stratus in the complex's parking lot. Officer Jolly called Ms. Jones on the telephone and asked her to come out of the apartment in an effort to avoid a confrontation with Defendant. Officer Jolly took Ms. Jones to a telephone booth down the street. Ms. Jones called Defendant, but he would not answer the phone. Ms. Jones then called Defendant on Officer Claxton's cell phone, and Defendant answered. Defendant and Ms. Jones talked for a few minutes, and Defendant agreed to come out of the house. Officer Claxton said they were able to take Defendant into custody without incident.

On cross-examination, Officer Claxton said that he had interviewed Dana Porter. He also had heard the name "Geno" mentioned in connection with the shooting, but he did not find anything linking him to the crime.

Mr. Jones' palm print was found on the outside rear door panel on the passenger side of the Dodge Stratus. Defendant's finger print was found on the driver's side window of the Dodge Stratus. Two of Mr. Windom's fingerprints were found on the Lexus.

Dr. Tom Deering, the interim medical examiner for Shelby County, stated that the cause of Mr. Windom's death was a gunshot wound to the abdomen. The bullet severed the right iliac artery and right common iliac vein causing severe internal hemorrhaging.

Defendant testified in his own behalf. He said that he was at Ms. Jones' apartment on August 7, 2001 until around noon. Defendant then went next door to his mother's house and spent the afternoon caring for her because she had recently had surgery. Around 4:00 p.m., he returned to Ms. Jones' apartment and told her he needed to get some fresh air. Defendant drove Ms. Jones' Dodge Stratus to Mr. Pickens' apartment around 4:15 p.m. Defendant said that Ms. Jones' kept calling him asking him to return her car. Defendant's brother, Marvin, came over to Mr. Pickens' apartment about thirty minutes after Defendant arrived. Defendant left the Dodge Stratus at Mr. Pickens' apartment complex, and Defendant and his brother went to another brother's house where Defendant met Daphne Love. Defendant and Ms. Love drove to Dyersburg around 5:00 p.m and returned to Memphis at 10:00 p.m. Defendant went back to Mr. Pickens' apartment complex and found that Ms. Jones had not retrieved her car. Mr. Pickens' girlfriend gave Defendant the keys to the Dodge, and he drove to Ms. Jones' apartment.

Defendant said that he answered the telephone when the police called Ms. Jones' apartment in the early morning hours of August 8, 2001. He said the police asked to speak to Ms. Jones because her car had been involved in a hit and run accident. Defendant hung up the telephone, and the police called back. Finally, Defendant gave the telephone to Ms. Jones who went outside.

On cross-examination, Defendant said that he had been sentenced to fifteen years on each of two prior burglary convictions. He said that he had seen Mr. Windom in the neighborhood but did not know him. Defendant said that he spoke with several people in Dyersburg, including his brother, Anthony, and Ms. Love's mother. Defendant said that Mr. Pickens was currently in the Shelby County jail. Defendant said that his brother had attended his trial during the State's proof, but the trial court would not allow his brother to testify. Defendant said that all of his family members were currently in Chicago attending his grandmother's funeral.

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to identify him as the perpetrator of the crimes beyond a reasonable doubt. There was no physical evidence tying him to the offenses, and Defendant contends that the eye-witness testimony was not credible. Mr. Wiseman did not know Defendant, and only had about thirty seconds to identify Defendant as one of the three men in the Dodge Stratus. Defendant submits that Ms. Hughes also spent very little time in Defendant's presence, and, in any event, there was no evidence linking the offenses of the two men who used Ms. Hughes' telephone.

Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Defendant's challenges primarily question the credibility of the State's witnesses. The State's proof showed that Mr. Wiseman identified Defendant as one of the three gunmen who accosted him and Mr. Windom at the brothers' place of business around 6:00 p.m on August 7, 2001. Mr. Wiseman said that Defendant was standing at the driver's door of the Lexus when Mr. Jones

forced him into the trunk. He heard an argument over money, and then a gunshot. Officer Claxton said that Mr. Windom exited the Lexus in front of a Mapco gas station. Mr. Windom collapsed at the gas station and died after he was transported to the hospital. Mr. Wiseman said that he was in the car trunk between fifteen and thirty minutes before he escaped when the car stopped at an apartment complex located next door to the Flairwood Apartments. Ms. Hughes, a resident of the Flairwood Apartments, identified Defendant as one of the men who used her telephone between 6:30 p.m. and 6:45 p.m. on August 7, 2001, to call a friend to pick them up.

Defendant's challenge to the sufficiency of the evidence merely attacks the credibility of the State's witnesses. It is well-established that questions regarding the credibility of witnesses, the weight and value of the evidence, and any factual issues raised by the evidence are resolved by the trier of fact. *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003). By its verdict, the jury obviously credited the testimony of the State's witnesses and rejected Defendant's version of what occurred on the day of the shooting. Based on the evidence presented, a reasonable trier of fact could find beyond a reasonable doubt that Defendant was one of the perpetrators of the charged offenses. Defendant is not entitled to relief on this issue.

## III. Exclusion of Impeachment Evidence

Defendant argues that the trial court erred in not allowing the defense to question Mr. Wiseman about his misdemeanor drug convictions in order to impeach his credibility and to show evidence of bias. *See* Tenn. R. Evid. 609; *State v. Sayles*, 49 S.W.3d 275, 279 (Tenn. 2001). Defendant concedes that he did not join with counsel for the co-defendant to seek admissibility of the evidence at trial but argues that the trial court's error may be reviewed as plain error. *See* Tenn. R. Crim. P. 52(b).

During Mr. Wiseman's cross-examination, the co-defendant's counsel sought to introduce evidence that Mr. Wiseman had been charged with felony drug offenses prior to Defendant's trial. The charged offenses were subsequently reduced to misdemeanor charges during plea negotiations that were conducted after Defendant was arrested for the current offenses. The trial court found that there was no evidence that the district attorney general's office in any way settled Mr. Wiseman's drug charges in exchange for his testimony at Defendant's trial. Following a lengthy hearing out of the presence of the jury, the trial court permitted the co-defendant's counsel to ask whether Mr. Wiseman had been promised anything by the district attorney general's office in exchange for his testimony. The trial court also concluded that the co-defendant's counsel could ask Mr. Wiseman about his prior misdemeanor theft conviction, but not the facts surrounding the offense. According to the record, Defendant's counsel did not verbally participate in the hearing concerning the admissibility of the evidence.

Rule 36(a) of the Tennessee Rules of Appellate Procedure provides that "[n]othing in this rule shall be construed as requiring relief to be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of the error." A panel of this Court has previously held that an objection by a co-defendant does not relieve

the other defendant of the obligation to enter a contemporaneous objection in order to preserve an issue for an appeal on his behalf. *State v. Steve Bradford*, No. 03C01-9607-CR-00278, 1998 WL 24417, at *6 (Tenn. Crim. App., at Knoxville, Jan. 20, 1998), *no perm. to appeal filed*. Defendant's failure to also request that the evidence be admissible constitutes a waiver of the issue on appeal.

Nor do we believe that this issue rises to the level of plain error. Issues that rise to the level of plain error lie within the sound discretion of the appellate court and may be considered: (1) to prevent needless litigation; (2) to prevent injury to the interests of the public; and (3) to prevent prejudice to the judicial process, prevent manifest injustice, or to do substantial justice. *See* Tenn. R. App. P. 13(b); Tenn. R. Crim. P. 52(b); *State v. Adkisson*, 899 S.W.2d 626, 638-39 (Tenn. Crim. App. 1994). In *Adkisson*, this Court stated that "the following factors should be considered by an appellate court when determining whether an error constitutes 'plain error:' (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice." *Id*. at 641-42.

Consideration of all of the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000). After a review of the record, we are unable to conclude that Defendant did not waive the issue as a matter of tactical strategy. Defendant did not offer any argument in support of the admissibility of evidence concerning Mr. Wiseman's prior misdemeanor convictions during the lengthy hearing on the issue, nor did he raise or attempt to raise any issues concerning Mr. Wiseman's prior misdemeanor drug convictions or the circumstances surrounding his prior theft conviction during his cross-examination of Mr. Wiseman. Based on our review of the record, we cannot conclude that Defendant's decision to remain silent was not a matter of tactical choice or strategy. "'[A] party cannot, either in a civil or criminal case, sit by and not object to testimony, take his chance of acquittal or conviction on testimony deemed incompetent, and then ask a reversal for such testimony in [the reviewing court.]'" *Id*. at 283 (quoting *McKenzie v. State*, 3 Tenn. Crim. App. 362, 368, 462 S.W.2d 243, 246 (1970)). Defendant is not entitled to relief on this issue.

## IV. Sentencing Issues

Defendant challenges both the length of his sentences and the imposition of consecutive sentencing. At the sentencing hearing for Defendant's convictions of especially aggravated kidnapping and unlawful possession of a handgun, the State relied on the evidence presented at trial and Defendant's pre-sentence report. According to the pre-sentence report, Defendant was convicted of two counts of second degree burglary in 1988 and sentenced to fifteen years on each count, with the sentences to be served concurrently. Defendant's other prior convictions, all committed prior to 1989, include convictions for third degree burglary, receiving stolen property over $100, receiving stolen property under $100, sexual battery, petit larceny, and two misdemeanor convictions. Based on Defendant's criminal history, the trial court sentenced him as a Range II, multiple offender, for all offenses. *See* Tenn. Code Ann. § 40-35-106. It appears that the trial court concluded that

Defendant had four prior Class C felony convictions although the record indicates that only the second degree burglary offenses are considered Class C felonies for sentencing purposes. *See id.* § 40-35-118. Nonetheless, a defendant is a "multiple offender" if he or she has at least two prior felony convictions within the conviction class, a higher class, or within the next two lower felony classes. *Id*. § 40-35-106(a)(1). Defendant was convicted of especially aggravated robbery, a Class A felony, and unlawful possession of a handgun, a Class E felony. Thus, Defendant's two prior second degree burglary convictions which are considered Class C felonies for sentencing purposes are sufficient to support his classification as a multiple offender for both convictions.

The trial court found that two enhancement factors were applicable in considering the length of both of Defendant's sentences. The trial court found that Defendant has a previous history of criminal convictions in addition to those necessary to establish the appropriate range. *See id*. § 40-35-114(2). In addition, the trial court found that Defendant had treated or allowed the victim to be treated with extreme cruelty by confining him in the trunk of a car where he could hear his brother's shooting. *See id*. § 40-35-114(6).

The trial court also found that consecutive sentencing was appropriate based on the extensiveness of Defendant's criminal history and his status as a dangerous offender. *Id*. §§ 40-35-115(b)(2) and (4). The trial court's based its classification of Defendant as a dangerous offender on the circumstances surrounding the offenses. The trial court considered most troubling the "brazen nature" of the offense which was committed in daylight on a public street, and the methodical method by which the two men were abducted and Mr. Windom was shot.

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. *Id.* § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). Our review in the case *sub judice* is *de novo* with a presumption of correctness because the trial court complied with the purposes, principles and procedures of the 1989 Sentencing Act.

The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. *Id*. §§ 40-35-102, -103, and -210; *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

A multiple offender is sentenced within the applicable Range II, or between twenty-five and forty years for a Class A felony, and between two and four years for a Class E felony. *Id*. §§ 40-35-106(c) and 40-35-112(b)(1) and (5). In calculating the sentence for a Class A felony conviction, the presumptive sentence is the midpoint of the range, or thirty-two and one-half years, if there are no enhancement or mitigating factors. *Id.* § 40-35-210(c). In calculating the sentence for a Class E felony conviction, the presumptive sentence is the minimum of the range, or two years, if there are no enhancement or mitigating factors. *Id.* If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum of the range, but still within the range. *Id.* § 40-35-201(d). If both enhancing and mitigating factors are present, the trial court must start at the minimum of the range, enhance the sentence within the range as appropriate for the enhancing factors, and then reduce the sentence as appropriate for the mitigating factors. *Id.* § 40-35-210(e). If there are mitigating but no enhancement factors present, then the trial court may set the sentence either at the minimum of the sentencing range, or below the midpoint. Based on the presence of two enhancement factors, the trial court sentenced Defendant to forty years for the Class A felony and four years for the Class E felony, or at the top of Range II for both offenses.

## A. Length of Sentence

Defendant does not challenge the application of enhancement factor (2) based on his prior convictions in excess of those necessary to elevate him to multiple offender status. *See* Tenn. Code Ann. § 40-35-115(2). Defendant argues, however, that the record does not support a finding that he acted with exceptional cruelty toward Mr. Wiseman, the victim of the especially aggravated kidnapping offense. Defendant contends that hearing the threats levied against his brother and "being placed in some discomfort" is insufficient to establish the applicability of this enhancing factor.

Generally, in order to support application of enhancement factor (6), the facts must support a "finding of cruelty under the statute 'over and above' what is required to sustain a conviction for [the] offense." *State v. Arnett*, 49 S.W.3d 250, 258-259 (Tenn. 2001) (citations omitted). The trial court must state what actions of the defendant, beyond the conduct necessary to establish the elements of the offense, constituted "exceptional cruelty." *State v. Poole*, 945 S.W.2d 93, 98 (Tenn. 1997) (quoting *State v. Goodwin*, 909 S.W.2d 35, 45 (Tenn. Crim. App. 1995)). The trial court based its findings on the fact that the victim was forced into the truck of the car at gunpoint, driven around for an extended period of time on a hot August afternoon, subjected to the sounds of his brother's shooting, and abandoned in an apparently empty parking area. We cannot conclude that the trial court erred in applying enhancement factor (6) in determining the length of Defendant's sentence for especially aggravated kidnapping. *See State v. Mario Pendergrass,* No. M1999-02532-CCA-R3-CD, 2002 WL 517133, at *18 (Tenn. Crim. App., at Nashville, Apr. 5, 2002), *perm. to appeal denied* (Tenn. Oct. 7, 2002).

Defendant argues that the application of the enhancement factors based upon factors which were not submitted to a jury violates the principles set forth in *Blakely v. Washington*, 542 U.S. ___, 124 S.Ct. 2531 (2004). Our Supreme Court, however, has recently concluded that Tennessee's

sentencing scheme does not violate a defendant's Sixth Amendment rights as addressed in *Blakely*. *State v. Edwin Gomez and Jonathan S. Londono*, ___ S.W.3d ___, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at *22 (Tenn. Apr. 15, 2005). Defendant is not entitled to relief on his *Blakely* challenge.

With the presence of two enhancement factors, and the obviously significant weight attributed to these factors by the trial court, the record supports the imposition of a forty-year sentence for Defendant's especially aggravated kidnapping conviction and four years for his felony possession of a handgun conviction.

## B. Consecutive Sentencing

The trial court ordered Defendant's sentences to be served consecutively to each other and to his life sentence for first degree felony murder based on its findings that Defendant had an extensive criminal history, and that he was a dangerous offender. Defendant argues that the evidence does not support the trial court's findings as to the extensiveness of his criminal history or his status as a dangerous offender. Defendant contends that consecutive sentencing is not necessary to protect the public and is not the least severe sentence necessary because, by virtue of his life sentence alone, Defendant will be over ninety years old when he is eligible for parole.

When a defendant is convicted of multiple crimes, the trial court, in its discretion, may order the sentences to run consecutively if it finds by a preponderance of the evidence that a defendant falls into one of seven categories. Tenn. Code Ann. § 40-35-115. In this instance, the trial court found that Defendant was "an offender whose record of criminal activity is extensive," and a "dangerous offender whose behavior indicates little or no regard for human life." *Id.* §§ 40-35-115(b)(2) and (4). If the trial court determines that consecutive sentencing is appropriate based on the dangerous offender category, the court must make two additional findings. *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). First, the trial court must find that an extended sentence is necessary to protect the public from further criminal conduct by Defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995).

Although such specific factual findings are unnecessary for the other categories enumerated in Tennessee Code Annotated section 40-35-115(b), the imposition of consecutive sentences is also guided by the general sentencing principles that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed.'"*Imfeld*, 70 S.W.3d at 708 (quoting Tenn. Code Ann. §§ 40-35-102(1) and -103(2)); *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

We disagree with Defendant's contention that the trial court "grossly overstate[d]" his criminal history. Defendant was forty years old at the time of sentencing. Defendant has been committing felony offenses since he was twenty years old. A review of his criminal history indicates that Defendant has been unable to refrain from committing offenses for any length of time when not

incarcerated, and his offenses have grown in severity over the years. In 1983, he pled guilty to receiving stolen property under $100 and petit larceny. He was sentenced to one year for each offense. In 1984, Defendant was sentenced to three years for a third degree burglary offense. In 1985, he was sentenced to one year for receiving stolen property in excess of $100, followed by a three-year sentence in 1986 for a third degree burglary conviction. In 1988, he was sentenced to concurrent fifteen year sentences for two second degree burglary convictions. During 1989, Defendant also committed and was convicted of sexual battery and sentenced to three years. Based on the record, we conclude that the evidence does not preponderate against the trial court's finding that Defendant "is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2).

Defendant argues that he is not a dangerous offender with little regard for human life because the victim, Mr. Wiseman, was not harmed during the kidnapping. The evidence, however, showed that Defendant and his co-defendant locked Mr. Wiseman inside the trunk of a car in August, and they abandoned the car with Mr. Wiseman still inside the trunk in a place where no one was present to hear his cries for help. The fact that Mr. Wiseman escaped unharmed is attributable more to his accidental activation of the trunk's emergency release button than any assistance on Defendant's part.

Defendant argues that consecutive sentencing is not necessary because he will be over ninety years old when he is eligible for release for his life sentence. The underlying principle behind consecutive sentencing, however, is not whether the length of the sentence is logical based on the age of the defendant at sentencing, but whether a defendant should "escape the full impact of punishment for one of [his] offenses." *State v. Robinson,* 930 S.W.2d 78, 85 (Tenn. Crim. App. 1995)(Defendant received consecutive life sentences for two first-degree murder convictions). *See also State v. Arnett*, 49 S.W.3d 250, 264-265 (Tenn. 2001)(Defendant ordered to serve sentences for especially aggravated kidnapping and aggravated rape consecutively); *Lane*, 3 S.W.3d at 463 (Defendant ordered to serve sentences for convictions of statutory rape and official misconduct consecutively.) "The power of a trial judge to impose consecutive sentences ensures that defendants committing separate and distinct violations of the law receive separate and distinct punishments." *Robinson*, 930 S.W.2d at 85.

The circumstances surrounding the commission of the offenses indicate that Defendant has little regard for human life and had no hesitancy about committing a crime where the risk to human life was high. The violence of these offenses support a finding that confinement is necessary to protect society from Defendant's conduct, and consecutive sentencing is reasonably related to the severity of the offenses. Tenn. Code Ann. §§ 40-35-102(1) and -103(1)(A).

Based upon the foregoing and the record as a whole, we conclude that the imposition of consecutive sentencing for Defendant's convictions for first degree felony murder, especially aggravated kidnapping and unlawful possession of a handgun is appropriate. Defendant is not entitled to relief on this issue.

## CONCLUSION

Following a thorough review of the record, we affirm the judgments of the trial court.

_____

THOMAS T. WOODALL, JUDGE