# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 16, 2000 Session

## STATE OF TENNESSEE v. DERRICK SAYLES

**Appeal from the Court of Criminal Appeals**
**Criminal Court of Shelby County**
**No. 97-00158     Arthur T. Bennett, Judge**

---

**No. W1998-00425-SC-R11-CD - Filed July 3, 2001**

---

Derrick Sayles was convicted of second degree murder. The Court of Criminal Appeals reversed the conviction and remanded the cause for a new trial on the ground that the trial court had erred in refusing to allow Sayles's counsel to probe the circumstances surrounding the bond reduction and the charge reduction accorded to the State's principal witness immediately after his testimony. The State appealed. We hold that the trial court erred when it refused to allow Sayles's counsel to probe the circumstances surrounding benefits granted to the witness after his testimony; Sayles's right to confrontation was therefore violated. We cannot hold that this violation was harmless beyond a reasonable doubt. This cause is therefore remanded to the trial court for an evidentiary hearing to allow Sayles's counsel to probe the circumstances resulting in the bond reduction and the charge reduction, both of which were granted after the witness had testified. The judgment of the Court of Criminal Appeals is therefore affirmed in part and reversed in part and this cause is remanded to the trial court for an evidentiary hearing.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed in Part and Reversed in Part; Remanded to the Criminal Court of Shelby County**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., FRANK F. DROWOTA, III, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, Peter M. Coughlan, Assistant Attorney General, William L. Gibbons, District Attorney General, James Wax, Assistant District Attorney General, and Patience Branham, Assistant District Attorney General, for the appellant, State of Tennessee.

Jeffery S. Glatstein, Memphis, Tennessee, for the appellee, Derrick Sayles.

## OPINION

## I. Facts and Procedural History

Derrick Sayles, the defendant, was charged with murder in the second degree. After jury selection, but before the State presented any evidence, the bailiff reported to the trial judge that Antonio Callicutt, a State's witness, had refused to enter the courtroom because of fear. With the jury absent, the trial judge ordered Callicutt to enter the courtroom in order to determine the reason for Callicutt's reluctance to testify. Once in the courtroom, Callicutt testified under oath that earlier that morning Sayles had threatened him and warned him not to testify. Callicutt also testified that two individuals had visited his girlfriend and their child at his house and had threatened that "something" would happen were he to testify. The record shows that Callicutt was determined not to testify for the State against Sayles. So hardened was his resolve in this regard that he defiantly stated to the trial court, "You can't make me testify"; he even invited an assistant district attorney general to charge him with perjury.

The trial judge perceived the threats as serious and permitted Patience Branham, an assistant district attorney general, to talk with Callicutt privately while Assistant District Attorney General James Wax examined another State's witness. Nothing concerning the conversation between Callicutt and Branham appears of record.

When Branham returned to the courtroom, she announced to the court that the State's next witness would be Callicutt. In sharp contrast to his vehement protestations made earlier, Callicutt was sworn, and Branham began examining him without incident. Callicutt testified that on the afternoon of October 16, 1996, while he was sitting on the front porch of his residence, he saw Martin Randolph, in a car, at a stop sign, on the corner of his street. According to Callicutt, he saw Sayles, also known as "Baba," ride a bicycle toward Randolph's car, yell "Payback, mother f-----," and shoot him repeatedly.[1] Callicutt testified that after the shooting, Randolph's car crashed into a parked car at a local grocery store. At the conclusion of the testimony, Branham asked Callicutt, "Have we promised you anything with [your aggravated robbery] case?"[2] The witness answered, "No ma'am."

Following a lengthy cross-examination, the witness was excused, and the jury left the courtroom. Wax stated to the court, "[W]e feel that [Callicutt] testified truthfully and in light of the fact that there have been some threats allegedly made on his person and in light of the fact that I have

---

[1]Callicutt testified that Sayles was accompanied by other individuals and "[t]hey were shooting the gun," and when Randolph's car began to drive away, "[t]hey kept shooting." When asked to clarify who "they" were and who shot at Randolph, Callicutt explained that while the defendant was accompanied by "some more boys," Sayles was the only one shooting.

[2]Callicutt was in custody at the time of Sayles's trial on a charge of aggravated robbery.

reviewed the case against him, the state would recommend a $1,000.00 bail for [Callicutt]."[3]  Wax also stated that after reviewing Callicutt's aggravated robbery charge, he believed the charge would be submitted to the grand jury as simple robbery rather than aggravated robbery.[4]  The trial judge accepted the recommendation and reduced the bond accordingly "in view of the alleged threats that [were] testified to under oath."

Edwin Lenow, Esquire, who represented Sayles at trial, asked if the bond reduction would be "told" to the jury because Callicutt had testified that he was not promised anything for his testimony.  Wax responded that Callicutt was not promised anything.  The trial court denied Lenow's request stating, "No.  He wasn't promised anything.  I'm [reducing the bond] based on threats."  Lenow asked if he could make an offer of proof; this request was also denied.

In addition to Callicutt's testimony, Gerald Madden, the dairy manager at Piggly Wiggly, testified that while he was in his car having lunch, Randolph's car hit the back of his car.  When Madden approached the car, Randolph said, "Baba did it."  Rhonda Nichols, a defense witness, testified that Callicutt was in the house with her when Randolph was shot.  Jerome Cooper, the security guard at Piggly Wiggly, testified that while he was in the store, he heard a crash.  When he went outside to see what had happened, he asked Randolph, "Who done this to you, who shot you?"  Randolph replied, "Ray."  When Cooper asked again, Randolph said, "Ray-ray."  Cooper testified that he "couldn't for sure say [Randolph] said 'Baba.'  But it sounded to me like 'Ray-ray.'"  Callicutt and Madden were the only State witnesses who linked Sayles to the shooting.  The jury convicted Sayles of second degree murder.

The Court of Criminal Appeals reversed the conviction and remanded the case for a new trial holding that:

> The defendant was clearly entitled to explore what, if anything, the prosecuting attorney told Callicutt prior to his testifying, and whether there had been an agreement between the state and Callicutt.  Specifically, the defendant was entitled to determine if the prosecuting attorney told Callicutt anything that would make Callicutt think he would be released on bail or receive any other favorable treatment if he testified for the state.

---

[3] The record does not reveal the original amount of his bond, but it is reasonable to assume, under the circumstances, that $1,000 would represent a substantial reduction.  This recommendation was made despite Callicutt's prior felony conviction and numerous misdemeanors.

[4] The record does not indicate whether Callicutt's charge was actually reduced from aggravated robbery to simple robbery.  The State, however, in its brief, concedes that the charge was reduced.  We will therefore treat the aggravated robbery charge as if it had been reduced.

The State appeals and asks this Court to determine whether the trial court erred in refusing to allow Sayles's counsel to probe the circumstances surrounding the bond reduction and the charge reduction which were granted after Callicutt had testified.

## II. Standard of Review

The right to explore or examine witnesses for bias is a fundamental right. See Davis v. State, 212 S.W.2d 374, 375 (Tenn. 1948). The exercise of this right is "controlled by the trial judge and his discretion will not ordinarily be disturbed." Id. Therefore, absent an abuse of discretion, we will uphold the trial court's decision.

## III. Analysis

We have been asked to determine whether Sayles was entitled to probe, through examination, the nexus, if any, between Callicutt's testimony and the bond reduction and the charge reduction, which were both accomplished immediately after his testimony.

A defendant has the right to examine witnesses to impeach their credibility or to establish that the witnesses are biased. This includes the right to examine a witness regarding any promises of leniency, promises to help the witness, or any other favorable treatment offered to the witness. See State v. Smith, 893 S.W.2d 908, 924 (Tenn. 1994); see also State v. Spurlock, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993). An undue restriction of this right may violate a defendant's right to confrontation under the Sixth Amendment of the United States Constitution and Article I, Section 9, of the Tennessee Constitution. See Smith, 893 S.W.2d at 924; see also State v. Black, 815 S.W.2d 166, 177 (Tenn. 1991).

> "[A] criminal defendant states a violation of the [federal] Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, thereby exposing to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witnesses."

Black, 815 S.W.2d at 177 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 680, 106 S. Ct. 1431, 1436, 89 L. Ed. 2d 674 (1986)). The exposure of a witness's motivation in testifying is a proper and important function of cross-examination. Van Arsdall, 475 U.S. at 678-79, 106 S. Ct. at 1435.

In the instant case, the testimony sought to be adduced pertained to the bias or prejudice of the State's key witness--Callicutt. Accordingly, after the trial court had granted the bond reduction, Sayles's counsel should have been allowed to examine witnesses to determine whether there was a connection between the largesse extended to Callicutt and his testimony; such a connection could create the inference that Callicutt was a biased or unreliable witness in the eyes of the jury. In other words, Sayles's counsel should have been able to probe for the reason that converted Callicutt from

a person who was ready to risk perjury in his refusal to testify into a willing and cooperative witness who, without hesitation, solidly incriminated the person against whom he had initially refused to testify. Although the record indicated that the trial judge had expressed concern for Callicutt's safety, the record contains nothing of a tangible nature which explains this startling turnabout. It may be that the witness had a self-generated change of heart. It may be that the conversation with Branham caused his conversion. Whatever the reason, the defendant was entitled to question these circumstances, and the trial court's failure to allow such an examination was error. We do not intend, however, by this opinion to suggest any impugnation of statements made by any officer of the court. We simply think that under these circumstances, Sayles's right to a fair trial entitled him to probe witnesses under oath. The trial court, therefore, erred in refusing to allow Sayles's counsel to delve deeper into the reasons for Callicutt's turnaround.

"Once a constitutional error has been established, as in this case, the burden is upon the State to prove that the constitutional right violation is harmless beyond a reasonable doubt." Momon v. State, 18 S.W.3d 152, 167 (Tenn. 2000) (citing State v. Harris, 989 S.W.2d 307, 314 (Tenn. 1999)). The United States Supreme Court stated in Delaware v. Van Arsdall that a violation of the right to confrontation may be deemed harmless "if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." 475 U.S. at 681, 106 S. Ct. at 1436; see also State v. Reid, 882 S.W.2d 423, 429 (Tenn. Crim. App. 1994) (citing Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). In determining whether the constitutionally improper denial of a defendant's opportunity to impeach a witness is harmless,

> [t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438; see also State v. Howell, 868 S.W.2d 238, 253 (Tenn. 1993).

In the present case, Callicutt was the State's key witness. Callicutt was the only witness who testified that he had seen Sayles shoot Randolph. If we assume that the "damaging potential" of any agreement between Callicutt and the State would have caused the jurors to discredit Callicutt's testimony, the only other witness who linked Sayles to the shooting would be Madden, who testified that Randolph said "Baba did it." Madden's testimony, however, was contradicted by Cooper who

testified that Randolph said "Ray-ray" did it.  Clearly, Callicutt was a crucial witness to the State's case, and an attack upon his credibility could have been significant.

Considering the evidence presented and the prohibited examination, we cannot confidently hold that the violation of Sayles's right to confrontation was harmless beyond a reasonable doubt. See Reid, 882 S.W.2d at 430.  We therefore remand this case to the trial court for an evidentiary hearing to allow Sayles to examine witnesses about a possible nexus between Callicutt's testimony, the bond reduction, and the charge reduction.  Cf. State v. Goad, 707 S.W.2d 846, 853-54 (Tenn. 1986).  If the trial court concludes that the State has met its burden of establishing that the error was harmless in that there was no connection between Callicutt's testimony and the subsequent request to lower the bond and charged offense, then the trial court should enter an order reflecting that conclusion.  If, however, the trial court should conclude that the State failed to prove that the error was harmless beyond a reasonable doubt, the trial court must grant a new trial.  See Momon, 18 S.W.3d at 168.  The judgment of the Court of Criminal Appeals is therefore affirmed in part and reversed in part, and this case is remanded to the trial court for an evidentiary hearing.

IV.  Conclusion

Accordingly, we conclude that Sayles's right to confrontation was violated when the trial court erred in refusing to allow his counsel to probe the circumstances surrounding the bond reduction and the charge reduction granted after Callicutt had testified.  We cannot hold that this violation was harmless beyond a reasonable doubt.  We therefore remand this case to the trial court for an evidentiary hearing to allow Sayles's counsel to examine witnesses regarding the benefits granted to Callicutt after his testimony.  The judgment of the Court of Criminal Appeals is therefore affirmed in part and reversed in part, and this case is remanded to the trial court for an evidentiary hearing.  Costs of this appeal are taxed to the State of Tennessee.

_____
ADOLPHO A. BIRCH, JR., JUSTICE