# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs November 18, 2014

## STATE OF TENNESSEE v. RYAN T. BRANDON

### Appeal from the Criminal Court for Roane County
### No. 2011-CR-151    E. Eugene Eblen, Judge

_____

### No. E2014-00591-CCA-R3-CD - Filed January 16, 2015

_____

Defendant, Ryan T. Brandon, was convicted of public intoxication and evading arrest. He received sentences of eleven months, twenty-nine days of supervised probation for evading arrest and thirty days of supervised probation for public intoxication. The sentences were ordered to be served concurrently. On appeal, Defendant challenges the trial court's denial of his motion for judgment of acquittal on the evading arrest charge, limitation of his cross-examination of the arresting officer, and failure to instruct the jury as to the defense of necessity. We hold that Defendant waived any claim of error with regard to the motion for judgment of acquittal by continuing to participate in the trial after the close of the State's proof by calling his own witness. However, we review the issue for sufficiency of the evidence. Based upon our review of the record, we hold that the evidence is insufficient to support the charge of evading arrest. The trial court's judgment as to that conviction is hereby reversed and dismissed. We hold that the evidence is sufficient to support Defendant's conviction for public intoxication. We also hold that the trial court's exclusion of impeachment evidence, though in error, was harmless beyond a reasonable doubt. Finally, we hold that Defendant's claim as to the jury instructions has been waived for failure to include the jury instructions in the record. The trial court's judgment as to the public intoxication conviction is hereby affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part, Reversed and Dismissed in Part

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Mark N. Foster, Rockwood, Tennessee, for the appellant, Ryan T. Brandon.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Russell Johnson, District Attorney General; and William Reedy, Assistant District Attorney General, for the appellant, State of Tennessee.

**OPINION**

*Factual Background*

Defendant was indicted by the Roane County Grand Jury for public intoxication and resisting arrest, which was later amended by agreement of the parties to evading arrest. Prior to trial, Defendant filed a motion to suppress evidence on the evading arrest charge. After a hearing, the trial court denied his motion. Defendant was tried by a jury on July 24, 2012. At trial, the following proof was adduced:

On December 28, 2009, Sergeant Jack Martin of the Harriman Police Department[1] responded to a residence around 12:20 a.m. in regard to a report of a vandalized vehicle. The residents, Laura Cooper and Jason Roberts, told Sergeant Martin that they had seen Defendant running from their driveway after he had vandalized Mr. Roberts's vehicle. Sergeant Martin observed extensive damage to the vehicle. Sergeant Martin called another officer who was in the area, Officer Jajuan Hamilton[2], and told him to be on the lookout for Defendant.

Sergeant Martin then received another call from dispatch about a potential robbery in progress at another home close to his current location. Both Sergeant Martin and Officer Hamilton proceeded to that location and spoke with the occupants of the home. The occupants reported that Defendant was beating on the door and stated that he had been in an argument with his girlfriend. One of the occupants then slammed the door and the glass broke. The other occupant became afraid and called 911. Defendant ran away from the scene before the officers arrived.

Sergeant Martin and Officer Hamilton proceeded separately to search the neighborhood for Defendant. Officer Hamilton located Defendant on a nearby street.

---

[1]At the time of trial, Sergeant Martin was employed as an officer for the Roane State Police Department.

[2]At the time of trial, Officer Hamilton was employed as an officer for the City of Knoxville Police Department.

Officer Hamilton approached in his marked patrol car, but neither his headlights nor his blue lights were on. He noticed Defendant was not wearing any shoes or a coat. Officer Hamilton instructed Defendant to step in front of the vehicle with the intention of recording their interaction on the camera in the vehicle's dashboard.[3] Defendant responded, "For what[?]" As Officer Hamilton exited the vehicle, he again told Defendant to step in front of the car. Defendant responded that he was not going to jail and ran off. Officer Hamilton deployed his Taser in order to apprehend Defendant. The prongs of the Taser made contact with Defendant, and Defendant fell to the ground, ending the pursuit. Officer Hamilton approached Defendant and asked him why he ran, explaining that he only wanted to ask him questions. Officer Hamilton testified that he noticed an odor of alcohol both before and after he apprehended Defendant.

Sergeant Martin responded to Officer Hamilton's location and saw Defendant on the ground approximately fifty to sixty feet in front of Officer Hamilton's patrol car. Sergeant Martin noticed a very strong odor of alcohol about Defendant, that his speech was slurred, and that he was not wearing any shoes or a coat. Defendant was also bleeding from the mouth and appeared to have a broken jaw and missing teeth. Officer Hamilton testified that Defendant's "speech sounded fine" before he was injured. Defendant was taken to the hospital for his injuries, but a blood alcohol analysis was not performed. Defendant was not arrested that night. Both Sergeant Martin and Officer Hamilton testified that they could not take Defendant to the jail because of his injuries.

At the close of the State's case-in-chief, Defendant made a motion for judgment of acquittal on the evading arrest charge, as discussed further below. The trial court denied his motion.

As his only witness, Defendant called his mother, Bonnie Spurlin. Ms. Spurlin testified that she lives next door to the house that Defendant shared with Jennifer Hanks and their fourteen-month-old son. Shortly before the night in question, Defendant had moved out of Ms. Hanks's house and was staying with Ms. Spurlin. On December 28, Defendant spent most of the day at Ms. Spurlin's residence. He did not drink any alcohol because Ms. Spurlin did not allow him to drink in her home. Defendant left that evening to have dinner with some friends. Later that night, Defendant called Ms. Spurlin "[u]pset and talking very fast." He told her that he had received a phone call informing him that Ms. Hanks was at a club in Knoxville. He stated that he did not know where his son was or who was taking care of him. He stated that he was going out to find his son.

_____

[3]Officer Hamilton's encounter with Defendant was recorded on the officer's in-car camera, and the video was published to the jury. However, the video was not made an exhibit and is not part of the record on appeal.

Ms. Spurlin testified that she went to where Officer Hamilton apprehended Defendant and saw blood everywhere. Officer Hamilton told her that Defendant was arrested for public intoxication. Defendant told Ms. Spurlin that he had a couple of beers with dinner, but she did not notice an odor of alcohol about his person. Ms. Spurlin testified that Defendant was not intoxicated when she saw him at the scene or later when she saw him at the hospital.

The State then called Jason Roberts as a rebuttal witness. Mr. Roberts testified that he has known Defendant and Ms. Hanks for several years. On the night in question, Mr. Roberts and his girlfriend, Laura Cooper, were at Ms. Hanks's residence with her and Defendant's son. Ms. Hanks had gone out with her sister and had asked Mr. Roberts to watch her son. He testified that the child was safe inside the residence the entire evening. Mr. Roberts testified that he was awoken late that evening by the sound of glass breaking. He looked outside and saw that his vehicle was extensively damaged and saw Defendant running up the street away from the residence. Mr. Roberts testified that he and Defendant subsequently agreed that Defendant would buy him another vehicle if he did not prosecute Defendant for vandalism over $1,000.

The jury convicted Defendant of public intoxication and evading arrest. On December 11, 2013, the trial court sentenced Defendant to a thirty-day term of probation for the public intoxication conviction and an eleven month, twenty-nine-day term of probation for the evading arrest conviction. These sentences were ordered to run concurrently.

Defendant subsequently filed a motion for new trial. The trial court denied this motion. Defendant then filed a timely notice of appeal.

*Analysis*

Defendant raises three issues on appeal: (1) that the trial court erred in denying his motion for judgment of acquittal on the evading arrest charge; (2) that the trial court impermissibly limited his cross-examination of Officer Hamilton by not allowing him to introduce extrinsic evidence of the officer's bias; and (3) that the trial court erred in not instructing the jury on the defense of necessity. We will address each issue in turn.

*Motion for Judgment of Acquittal*

Defendant argues that the trial court erred in denying his motion for judgment of acquittal on the evading arrest charge made at the close of the State's case-in-chief. Defendant contends that Officer Hamilton was not attempting to arrest Defendant at the time he fled and, therefore, his conviction for evading arrest cannot stand, relying on this Court's holding in *State v. Holbrooks*, 983 S.W.2d 697 (Tenn. Crim. App. 1998). The State responds

that the evidence presented at trial showed the Defendant believed that Officer Hamilton was going to arrest him and was, therefore, sufficient to support a conviction for evading arrest.

Rule 29(b) of the Tennessee Rules of Criminal Procedure provides as follows:

On defendant's motion or its own initiative, the court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

"This rule empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the [S]tate rests or at the conclusion of all the evidence." *State v. James*, 315 S.W.3d 440, 455 (Tenn. 2010) (citing *Overturf v. State*, 571 S.W.2d 837, 839 n.2 (Tenn. 1978)). "At the point the motion is made, the trial court must favor the opponent of the motion with the strongest legitimate view of the evidence, including all reasonable inferences, and discard any countervailing evidence." *Id.* (citing *Hill v. State*, 470 S.W.2d 853, 858 (Tenn. 1971)).

When the motion for judgment of acquittal is made at the conclusion of the State's evidence and is not granted, "the defendant may offer evidence without having reserved the right to do so." Tenn. R. Crim. P. 29(c). However, by choosing to present proof, a defendant waives any claim of error for failure to grant the motion at the close of the State's case-in-chief. *State v. Collier*, 411 S.W.3d 886, 893 (Tenn. 2013); *see also Finch v. State*, 226 S.W.3d 307, 316 (Tenn.2007) (citing *Mathis v. State*, 590 S.W.2d 449, 453 (Tenn.1979)) ("[A] defendant waives his or her right to appeal from a trial court's refusal to grant a motion for judgment of acquittal if the defendant continues to participate in the trial after the close of the State's proof."). Our supreme court has held that a defendant must stand on the motion rather than offering proof, or even cross-examining a co-defendant's witness, during the remainder of the trial or else waive the issue. *Finch*, 226 S.W.3d at 316-17; *accord State v. Thompson*, 549 S.W.2d 943, 945 (Tenn. 1977). If the defendant offers evidence and does not stand upon his motion, then the defendant must renew the motion at the end of all of the proof to have the issue considered on appeal. *State v. Deredious Otis*, No. W2009-02187-CCA-R3-CD, 2010 WL 5271611, at *3 (Tenn. Crim. App. Dec. 7, 2010) (citing *Thompson*, 549 S.W.2d at 945). "If the defendant renews the motion, the trial and appellate courts will determine whether the motion should be granted based on a review of the entire record," not just the State's case-in-chief. *Id.*

At the close of the State's proof, Defendant made a motion for judgment of acquittal, which the trial court denied. After the trial court's denial, Defendant continued to participate in the trial by calling a witness and cross-examining the State's rebuttal witness. Defendant

did not stand on his motion for judgment of acquittal, nor is there any indication in the record that he renewed his motion at the close of all the proof. Therefore, we conclude that Defendant has waived review of his motion for judgment of acquittal.

However, the State has addressed Defendant's argument as essentially challenging the sufficiency of the convicting evidence. Because the standard by which the trial court determines a motion for judgment of acquittal is identical to the standard which applies on appeal in determining the sufficiency of the evidence after a conviction, *James*, 315 S.W.3d at 455, and would result in a dismissal of the conviction if ruled insufficient, we will consider the sufficiency of the evidence in spite of Defendant's waiver of his claim surrounding the motion for judgment of acquittal. *See State v. Jeffrey Wade Osborne*, No. M2010-02281-CCA-R3-CD, 2012 WL 1657047, at *3 (Tenn. Crim. App. May 9, 2012). Our review of the sufficiency of the evidence is not based solely on the evidence offered during the State's case-in-chief, but must also necessarily include the proof offered by Defendant as well as the State's rebuttal witness. *See State v. Gilley*, 297 S.W.3d 739, 763 (Tenn. Crim. App. 2008).

In reviewing the sufficiency of the evidence on appeal, the relevant question is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); Tenn. R. App. P. 13(e). This Court "must afford the State the strongest legitimate view of the evidence and any reasonable inferences that may be drawn therefrom." *James*, 315 S.W.3d at 455 (citing *State v. Hanson*, 279 S.W.3d 265, 274 (Tenn. 2009)). Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). The jury's verdict replaces the presumption of innocence with one of guilt, and the burden is on the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). It is not the role of this Court to re-weigh the evidence nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* This standard of review applies whether the conviction was based on direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

The evading arrest statute provides, in pertinent part, that "it is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person . . . [k]nows the officer is attempting to arrest the person." T.C.A. § 39-16-603(a)(1)(A). An essential element of the offense of evading arrest is that the defendant "[k]nows the officer is attempting to arrest" him at the time he flees. *State v. Vincent Conner*, No. M2005-00887-CCA-R3-CD, 2006 WL 2563372, at *7 (Tenn. Crim. App. Aug. 23, 2006), *perm. app. denied*, (Tenn. Dec. 27, 2006). "The issue is whether

the officer was attempting to arrest the defendant and if so, whether the defendant knew that." *Holbrooks*, 983 S.W.2d at 702. Logic dictates that if an officer is not attempting to arrest the defendant, then there is no arrest for the defendant to evade.

This Court has consistently held that where an officer is not actually attempting to arrest the defendant, a conviction for evading arrest cannot stand. In *State v. Lewis*, this Court found that, even though the officer was in the process of obtaining an arrest warrant, he "had not yet begun his attempt to arrest" the defendants before they fled. 978 S.W.2d 558, 563 (Tenn. Crim. App. 1997). In *Holbrooks*, the officer lacked probable cause to arrest the defendant until after he apprehended the defendant and asked him a few questions to determine that the defendant was trespassing; therefore, this Court determined that the officer was not attempting to arrest the defendant at the time he engaged in his pursuit. 983 S.W.2d at 703. In *State v. Antonio Faulkner*, this Court overturned a conviction for evading arrest when the officers testified that, at the time their pursuit of the defendant began, they were merely attempting to investigate his potential connection to a robbery, even though the defendant matched the description of one of the men who had robbed a pizza delivery man and was carrying a pizza box. No. 03C01-9806-CR-00217, 1999 WL 1039714, at *3 (Tenn. Crim. App. Nov. 12, 1999). In *Vincent Conner*, this Court overturned a conviction for evading arrests when the proof showed that the officers approached the defendant not to arrest him but to serve him with papers, the defendant was not engaged in any obvious illegal activity that would support an arrest, and the officers never announced that they were attempting to arrest him. 2006 WL 2563372, at *7. In *State v. Christopher Burress*, this Court determined that the officer was not attempting to arrest the defendant when the officer approached a large group of people, of which defendant was but one, in response to a call about a possible shooting and the group, including defendant, ran off. No. E2012-00861-CCA-R3-CD, 2013 WL 1097809, at *6 (Tenn. Crim. App. Mar. 18, 2013), *perm. app. denied*, (Tenn. July 10, 2013).

On the night in question, Officer Hamilton was told by Sergeant Martin to be on the lookout for Defendant in relation to a vandalism of a vehicle. Both officers also responded to a call about a potential robbery in progress; the occupants of the home named Defendant as the person who had come to their door. When Officer Hamilton found Defendant a few minutes later, he did not activate the blue lights on his patrol vehicle. Officer Hamilton testified that he "intended to speak with [Defendant] in reference to the vehicle vandalism and also the disturbance call." Officer Hamilton asked Defendant to step in front of the patrol vehicle so that their encounter would be recorded by the vehicle's dash camera. Defendant responded, "For what?" As he was exiting the patrol car, Officer Hamilton again asked Defendant to step in front of the vehicle. Defendant stated that he was not going to jail and ran. Officer Hamilton deployed his Taser to subdue and apprehend Defendant. Officer Hamilton then approached Defendant and told him that all he wanted to do was talk

to him.

There was insufficient evidence presented at trial that Officer Hamilton was actually attempting to arrest Defendant at the time he ran. Even though Ms. Spurlin testified that Officer Hamilton told her that Defendant was under arrest for public intoxication, Officer Hamilton did not testify that he was attempting to arrest Defendant for that crime. Additionally, it is not clear whether he had probable cause to arrest Defendant for public intoxication until after he apprehended Defendant. Officer Hamilton testified that he was investigating the reported vandalism of a vehicle and alleged robbery, but he never clearly testified that he intended to arrest Defendant. On direct examination, he stated that he intended to speak with Defendant regarding those incidents. On cross-examination, he stated that his investigation would "likely . . . result in an arrest," but he could not say that he intended to handcuff Defendant at the time he exited his patrol car. He never announced that Defendant was under arrest. Even if Defendant's statement that he was not going to jail could be interpreted as an admission that he believed that the officer was attempting to arrest him,[4] there must have been an actual arrest for him to evade. Even in the light most favorable to the State, we cannot conclude that there is sufficient evidence that Officer Hamilton was attempting to arrest Defendant at the time that Defendant fled. Therefore, we reverse Defendant's conviction for evading arrest and dismiss that charge.

Even though Defendant has not challenged the sufficiency of the evidence with regard to his conviction for public intoxication and did not address it in his motion for judgment of acquittal, we will review the evidence supporting that conviction in the interest of completeness. Based upon our review of the record, we find that the evidence presented at trial was sufficient to sustain that conviction. Public intoxication is committed when a person appears in a public place under the influence of any intoxicating substance to the extent that the person endangers himself or others or "unreasonably annoys people in the vicinity." T.C.A. § 39-17-310. Sergeant Martin testified that Defendant had slurred speech, and both Sergeant Martin and Officer Hamilton testified that Defendant smelled of alcohol. Even though there was contradicting evidence on both of these issues—Ms. Spurlin denied smelling any alcohol on Defendant, and Sergeant Martin testified that he did not know what effect a broken jaw would have on Defendant's speech—we must presume that the jury reconciled all conflicts in the proof in favor of the State. *See Wagner*, 382 S.W.3d at 297.

---

[4]A conviction for evading arrest may be sustained if the defendant admits that he knows that the officer was attempting to arrest him. *See State v. Black*, 924 S.W.2d 912, 915 (Tenn. Crim. App. 1995) (the defendant admitted at trial that he knew when he was told to put his hands on the hood of the car that he was "going to be arrested"); *State v. James A. McCurry*, No. W2002-02870-CCA-R3-CD, 2003 WL 22848975, at *3 (Tenn. Crim. App. Nov. 26, 2003), *perm. app. denied*, (Tenn. May 10, 2004) (the defendant testified at trial that he knew he had an outstanding arrest warrant when he fled from officers). In both of those cases, the officers actually were attempting to arrest the defendants.

Additionally, Ms. Spurlin testified that Defendant admitted to her that he had consumed a couple of beers that evening. Sergeant Martin testified that he had received two complaints about Defendant's behavior that night, sufficiently showing that Defendant was unreasonably annoying people in the vicinity. Therefore, we find the evidence is sufficient to sustain Defendant's conviction for public intoxication.

*Limitation of Cross-Examination*

Defendant argues that the trial court erred in limiting his cross-examination of Officer Hamilton regarding his bias. Specifically, Defendant complains that he was precluded from admitting certain documents related to the civil case Defendant filed in federal court against Officer Hamilton and the Harriman Police Department based on the injuries he sustained during this incident. These documents purportedly show that Officer Hamilton was interested in the outcome of the criminal case because of its potential impact on the civil case. The State contends that the trial court did not abuse its discretion in excluding extrinsic evidence of Officer Hamilton's bias because Defendant was allowed to ask Officer Hamilton about the civil case and whether it influenced his testimony.

"The right to explore or examine witnesses for bias is a fundamental right." *State v. Sayles*, 49 S.W.3d 275, 279 (Tenn. 2001) (citing *Davis v. State*, 212 S.W.2d 374, 375 (Tenn. 1948)). An undue restriction on the right to cross-examination "may violate a defendant's right to confrontation under the Sixth Amendment of the United States Constitution and Article I, section 9 of the Tennessee Constitution." *Id.*

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness.

*State v. Reid*, 882 S.W.2d 423, 428 (Tenn. Crim. App. 1994) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). The defendant in a criminal prosecution has the right to examine the prosecution's witnesses to impeach their credibility or to establish that the witnesses are biased or prejudiced. *Sayles*, 49 S.W.3d at 279; *State v. Spurlock*, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993).

"[E]xposure of a witness's motivation in testifying is a proper and important function of cross-examination." *Sayles*, 49 S.W.3d at 279 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986)). A defendant should not be "prohibited from engaging in otherwise

appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, thereby exposing to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witnesses." *State v. Black*, 815 S.W.2d 166, 177 (Tenn. 1991) (quoting *Van Arsdall*, 475 U.S. at 680). "The feelings that a witness has with regard to a party or issue are an important factor for the trier of fact to consider in assessing the weight to be given to the witness' testimony." *State v. Williams*, 827 S.W.2d 804, 808 (Tenn. Crim. App. 1991); *see Creeping Bear v. State*, 87 S.W. 653, 653 (Tenn. 1905) ("It is always competent to prove the friendliness or unfriendliness of a witness, his partiality for one party or hostility to the other, in order that the jury may judge of his credibility and the trustworthiness of his testimony."). One method of establishing bias or prejudice is to show that the witness is involved in a pending lawsuit related to the events at issue in the criminal trial. *See State v. Wingard*, 891 S.W.2d 628, 631 (Tenn. Crim. App. 1994), *overruled on other grounds by State v. James*, 81 S.W.3d 751 (Tenn. 2002); *State v. Robert E. Smith*, No. 03-C01-9203-CR-00067, 1993 WL 119806, at *12 (Tenn. Crim. App. Apr. 15 1993); *see also State v. Michael S. Nevens*, No. M2000-00815-CCA-R3-CD, 2001 WL 430602, at *7 (Tenn. Crim. App. Apr. 27, 2001) (citing Neil P. Cohen et al., *Tennessee Law of Evidence* § 616[4][d], at 6-170 (4th ed. 2000)).

It has long been the rule that "[e]xtrinsic evidence may be presented which relates to beliefs of the witness or to preexisting relationships between the witness and the defendant which are of a nature likely to result in bias for one party or prejudice against another." *Williams*, 827 S.W.2d at 809 (citing *United States v. Abel*, 469 U.S. 45 (1984)); *see Creeping Bear*, 87 S.W. at 653 ("[P]roof of the relations of the witness to the parties may be shown by proving his conduct and expressions in relation to them by cross-examination of the witness, or independently by witnesses called for that purpose."). This rule has been codified in the Tennessee Rules of Evidence as Rule 616, which states that "[a] party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness."[5] As this Court has previously noted, "regardless of whether the witness admits or denies the bias, counsel is not precluded from introducing extrinsic evidence to further illustrate the witness's bias if the proposed evidence complies with the remaining rules of evidence." *Fred Thompson, Jr. v. State*, No. M2009-02457-CCA-R3-PC, 2011 WL 1197620, at *10 (Tenn. Crim. App. Mar. 31, 2011), *perm. app. denied*, (Tenn. Aug. 24, 2011).

In this case, defense counsel asked Officer Hamilton if he was angry that Defendant had filed a lawsuit against him and the City of Harriman, which Officer Hamilton denied.

---

[5]"Whereas the Federal Rules of Evidence do not specifically provide for this type of impeachment evidence, it is interesting to note that the drafters of our Rules included such a provision in order to eliminate any doubt." *Williams*, 827 S.W.2d at 809.

Defense counsel asked whether Officer Hamilton thought that "if you can get the jury to convict [Defendant] in this case, that it's going to affect the outcome in the civil case," to which Officer Hamilton responded, "that's not what I think at all." Defense counsel then attempted to introduce several documents—a motion to stay proceedings in federal court filed by Officer Hamilton's civil attorney, a letter to the District Attorney's office from Officer Hamilton's civil attorney, and an intraoffice email indicating that Officer Hamilton had called the District Attorney's office regarding Defendant's case—purportedly showing Officer Hamilton's personal interest in the outcome of the criminal case because of its potential impact on the outcome of the civil case. The State objected.

During a jury-out hearing, defense counsel argued that these documents would show "whether [Officer Hamilton] has a bias to testify and slant the facts favorably to the prosecution." The trial court ruled that the documents were not relevant to whether Defendant was publicly intoxicated or evaded arrest. The court stated, "This doesn't have anything at all to do with this case. . . . We are not going to try anything else." The trial court then made the following ruling:

> Just for clarification, you can ask him if there is a lawsuit. You did that. And you asked him if that influenced his testimony today. You did that. That's as far as you can go. You are bound by that and you can't introduce this other stuff.

The trial court's ruling that the proposed evidence was irrelevant was in error. Under the Tennessee Rules of Evidence, "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Tenn. R. Evid. 611(b). "The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony." *Reid*, 882 S.W.2d at 428 (quoting *Davis v. Alaska*, 415 U.S. at 316) (internal citation removed). The State argues that the trial court did not abuse its discretion because Defendant was allowed to ask Officer Hamilton if he was influenced by the civil suit. However, as previously stated, "regardless of whether the witness admits or denies the bias, counsel is not precluded from introducing extrinsic evidence to further illustrate the witness's bias if the proposed evidence complies with the remaining rules of evidence."[6] *Fred Thompson, Jr.*, 2011 WL 1197620, at *10; *see Graham v. McReynolds*, 12 S.W. 547, 549 (Tenn. 1889) (holding that if a witness denies being influenced, a defendant should be able to contradict that assertion and the jury should determine whether or not the witness was indeed subject to the influence). These documents

---

[6]We are not deciding whether the proposed evidence complies with the other rules of evidence regarding hearsay and prior inconsistent statements, as that was not argued in the trial court and was not presented on appeal.

—purporting to show Officer Hamilton's interest in the criminal case because of its potential impact on the civil case—combined with Officer Hamilton's admission that he had never previously testified at a jury trial on a public intoxication charge despite issuing hundreds of citations, could create an inference in the minds of the jurors that his interest in this case extended beyond professional interest in prosecuting criminal charges.

We recognize that a trial court is "authorized to exercise its discretion in imposing appropriate limits upon the examination of witnesses." *Reid*, 882 S.W.2d at 430 (citing Tenn. R. Evid. 611; *State v. Lewis*, 803 S.W.2d 260, 262 (Tenn. Crim. App. 1990)). The trial court may "take into account such factors as harassment, prejudice, issue confusion, witness safety, or merely repetitive or marginally relevant interrogation" when imposing limits upon cross-examination. *Id.* (citing *Olden v. Kentucky*, 488 U.S. 227, 232 (1988); *Van Arsdall*, 475 U.S. at 679); *see* Tenn. R. Evid. 403. In this case, defense counsel was not being repetitive or unduly harassing in his questions, nor was he attempting to confuse the jury by addressing the merits of Defendant's civil rights claims. Under Tennessee Rule of Evidence 616 and the constitutional right to confrontation, it was error for the trial court to prohibit Defendant from presenting this impeachment evidence.

The State contends that, even if the trial court's ruling was in error, this error was harmless. "Once a constitutional error has been established, as in this case, the burden is upon the State to prove that the constitutional right violation is harmless beyond a reasonable doubt." *Sayles*, 49 S.W.3d at 280 (quoting *Momon v. State*, 18 S.W.3d 152, 167 (Tenn. 2000)); *see also State v. Noura Jackson*, __ S.W.3d __, No. W2009-01709-SC-R11-CD, 2014 WL 4161966, at *28 (Tenn. Aug. 22, 2014). In reviewing whether a violation of the right to confrontation is harmless:

> [t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Sayles*, 49 S.W.3d at 280 (quoting *Van Arsdall*, 475 U.S. at 684); *see also Reid*, 882 S.W.2d at 429.

Officer Hamilton was certainly a key witness for the State, and an attack upon the credibility of a crucial witness which could cause a jury to doubt his truthfulness would be significant. *See Reid*, 882 S.W.2d at 430. However, because we have already determined that the evidence was insufficient to sustain the conviction for evading arrest, our harmlessness inquiry will focus upon only the conviction for public intoxication. As discussed above, Officer Hamilton's testimony that Defendant smelled of alcohol was corroborated by Sergeant Martin. Sergeant Martin also responded to the complaints that were being made about Defendant's behavior that night (the vandalism of a vehicle and the supposed robbery), and he was the one who directed Officer Hamilton to be on the lookout for Defendant. There was no indication that the proposed impeachment evidence would have implicated any prejudice on the part of Sergeant Martin. Even if the jury had heard the erroneously excluded evidence and completely discredited the testimony of Officer Hamilton, there is still sufficient evidence in the record to support the conviction for public intoxication. Therefore, we hold that the trial court's ruling preventing Defendant from introducing extrinsic evidence of Officer Hamilton's bias, though in error, was harmless beyond a reasonable doubt.

*Jury Instruction*

Finally, Defendant argues that the trial court erred in denying his request to instruct the jury on the defense of necessity. Defendant argues that, from the proof at trial, a reasonable jury could conclude that Defendant was in public, supposedly while intoxicated, because he was concerned about the well-being of his young child after learning that the child's mother had gone to a club in Knoxville and not knowing the child's whereabouts. The State argues that, even in the light most favorable to Defendant, the instruction was not supported by the proof presented at trial. However, the jury instructions are not included in the record, precluding appellate review of this issue.

"[A] defendant has a right to a correct and complete charge of the law." *State v. Farner*, 66 S.W.3d 188, 204 (Tenn. 2001) (citations omitted). The trial court has a duty to give "a complete charge of the law applicable to the facts of the case." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citation omitted). A defendant may, however, waive an issue regarding the failure to issue a jury instruction by not including an adequate record for appellate review. *See State v. William Ray Boatwright*, No. E2012-00688-CCA-R3-CD, 2013 WL 775787, at *8 (Tenn. Crim. App. Feb. 28, 2013), *perm. app. denied*, (Tenn. June 12, 2013). It is Defendant's duty "to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues [that] form the basis of the appeal." *State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999); *see* Tenn. R. App. P. 24(b). When necessary parts of the record are not included, we must presume that the trial court's ruling was correct. *See State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim.

App. 1991).

Defendant has failed to include a copy of the jury instructions in the record before us. The only references to the necessity instruction in the record are the argument of counsel at the close of the State's case-in-chief regarding whether the instruction was warranted in this case and the trial court's statement that it would reserve ruling on the matter until the close of all proof. The State's attorney did mention that part of Mr. Roberts's testimony would be to rebut the defense of necessity; however, further argument on the matter and the trial court's final ruling are not included in the transcript of the proceedings. As previously stated, it is Defendant's duty to prepare an adequate record on appeal. Therefore, this issue has been waived.

## *Conclusion*

Based upon our review of the record, we find that the evidence was insufficient to support Defendant's conviction for evading arrest. The trial court's judgment is hereby reversed, and the charge of evading arrest is dismissed. As to the charge of public intoxication, we find that the evidence is sufficient to sustain that conviction. We also find that the trial court's limitation of Defendant's cross-examination of Officer Hamilton, though erroneous, was harmless beyond a reasonable doubt. Defendant's argument that the trial court should have given a jury instruction on the defense of necessity has been waived. Therefore, the trial court's judgment as to the public intoxication conviction is affirmed.

_____
TIMOTHY L. EASTER, JUDGE