IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 6, 2015


**STATE OF TENNESSEE v. PAMELA MOSES**


**Appeal from the Criminal Court for Shelby County**
**No. 1300818     James C. Beasley, Jr., Judge**

———————————————————

**No. W2014-01986-CCA-R3-CD  -  Filed May 17, 2016**

———————————————————


Defendant, Pamela Moses, was indicted by the Shelby County Grand Jury for theft under $500.  Defendant was convicted by a jury as charged.  The trial court imposed a $350 fine.  Defendant appeals and raises the following issues for our review: 1) the trial court improperly allowed a witness for the State, who was an inmate, to wear "street" clothing when she testified; 2) the trial court erred by limiting cross-examination of a State's witness; and 3) the State committed prosecutorial misconduct during closing argument. Having reviewed the record on appeal, we conclude that the judgment of the trial court should be affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Michael R. Working, Memphis, Tennessee, for the Appellant, Pamela Moses.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the Appellee, State of Tennessee.


**OPINION**

*Facts*

Sophie Strauss testified that on September 28, 2012, she was working as an assistant manager at American Apparel in Memphis.  She testified that Defendant was waiting outside the store when Ms. Strauss opened the store.  Ms. Strauss opened the

doors "a couple minutes early for her." Ms. Strauss was standing behind the cash register, and Defendant asked if there were any tights in the store. Ms. Strauss pointed out the tights to Defendant, and Defendant took two pairs of tights into a dressing room with her. Ms. Strauss noticed that both pairs were on the same hanger. While Defendant was in the dressing room, Ms. Strauss was busy helping another customer. Defendant came out of the dressing room and told Ms. Strauss that she was "racist" for helping the other customer and not her. Ms. Strauss testified, "then she got real loud and it was causing a scene and so I was like you have to go." Defendant left the store holding the tights in her hand. Ms. Strauss testified that Defendant asked Ms. Strauss to check her out, and Ms. Strauss refused and told Defendant to leave the store. Ms. Strauss testified, "She was like, 'no.' She was like, 'if you're not going to sell me the pants, I'll just steal them[,]' and she walked out of the front door and the alarms went off." Ms. Strauss saw a police officer in his vehicle at a nearby traffic light. She told him that Defendant had stolen something from the store. The tights were recovered and returned to the store. Ms. Strauss testified that the tights were valued at $42.

Ms. Strauss acknowledged that she had a "serious" criminal charge pending against her that carried a potential sentence of 15 to 25 years. She testified that the State had not promised her any consideration in exchange for her testimony in Defendant's trial. Ms. Strauss denied that she discriminated against Defendant because of her race. Ms. Strauss acknowledged that she refused Defendant's request for service. She testified, "[s]he did ask me to check her out and I said no. Because she had already caused a scene and I wasn't going to fool with her, you know?" Ms. Strauss testified that there were plastic globes inside the store that were intended to prevent theft, but they did not contain security cameras.

Andrea Everett, an employee at American Apparel, testified that she was working on the day of the incident. She testified that Defendant was one of the first customers to come into the store. Ms. Everett was cleaning inside the store while Ms. Strauss was assisting Defendant. Ms. Everett heard an altercation between Defendant and Ms. Strauss. She testified that Defendant was upset, and Ms. Strauss was "trying to calm her down." She testified that Defendant claimed that Ms. Strauss had accused her of stealing when she took the tights into the dressing room. Ms. Everett testified that Defendant told Ms. Strauss, "'I can buy you.'" Ms. Everett testified, "that's when I felt like it ha[d] gotten out of control." She testified that Ms. Strauss "pretended like she was going to call the police, but she really wasn't calling the police, and [Defendant] got upset and said, 'well, I'm going to give you a reason to call the police.' And that's when she took the tights and walked out the door." Ms. Everett testified that Ms. Strauss refused to allow Defendant to purchase the tights, and Defendant asked Ms. Everett, "'sister, you're not going to ring me up?'" Ms. Everett also refused because "the situation had escalated to the point where she could purchase the tights online or go to a different store if she felt

2

that she was offended in any type of way within our store." Ms. Everett testified that there were no security cameras in the store. She testified that there were "security bubble[s]" located inside the store, but they were "supposed to be like a pretend camera."

Officer Parker Craig, of the Memphis Police Department, was stopped at a red light at the intersection where the clothing store is located. He saw Defendant leave the store. He testified that Defendant "looked at [him], and kept walking, didn't seem out of the ordinary." He testified that "[a] few minutes later," he saw Ms. Strauss exit the store. She was waving at him and pointing at Defendant, and she told Officer Craig that Defendant had stolen a pair of pants. Officer Craig saw Defendant getting into her vehicle. He activated his blue lights and pulled his vehicle behind Defendant's vehicle. He saw something that was thrown out of the passenger side of Defendant's vehicle. Officer Craig approached Defendant's vehicle and asked her get out of the vehicle. He asked Defendant to sit in the backseat of his vehicle while he spoke to Ms. Strauss. Officer Craig retrieved the pants that were on the ground beside Defendant's vehicle and returned them to Ms. Strauss.

Officer Craig testified that Defendant was initially agitated, and she and Ms. Strauss had a "heated" exchange. He testified that Defendant accused Ms. Strauss of being racist. He testified that Defendant was ultimately cooperative, and he issued Defendant a citation rather than placing her under arrest.

## Analysis

### Confrontation clause

Defendant contends that the trial court violated her right to confrontation by permitting the witness Sophie Strauss (who was incarcerated in lieu of bail) to testify wearing street clothing and by limiting defense counsel's cross-examination of Ms. Strauss.

The Confrontation Clause provides a criminal defendant the right to confront and cross-examine witnesses. *See* U.S. Const. amends. VI, XIV; Tenn. Const. art. I, § 9; *State v. Williams*, 913 S.W.2d 462, 465 (Tenn. 1996). A component part of this constitutional protection is the right to establish bias or to otherwise impeach the credibility of a witness. *State v. Rice*, 184 S.W.3d 646, 670 (Tenn. 2006); *State v. Sayles*, 49 S.W.3d 275, 279 (Tenn. 2001); *State v. Howell*, 868 S.W.2d 238, 252 (Tenn. 1993). The propriety, scope, manner, and control of cross-examination of witnesses, however, remain within the discretion of the trial court. *State v. Reid*, 213 S.W.3d 792, 839 (Tenn. 2006); *Rice*, 184 S.W.3d at 670. When the defendant's right to cross-examine witnesses

3

is unreasonably restricted, the trial court abuses its discretion. *Reid*, 213 S.W.3d at 839; *Rice*, 184 S.W.3d at 670; *Davis v. State*, 212 S.W.2d 374, 375 (Tenn. 1948).

In *State v. Sayles*, our supreme court explained, "[a] defendant has the right to examine witnesses to impeach their credibility or to establish that the witnesses are biased. This includes the right to examine a witness regarding any promises of leniency, promises to help the witness, or any other favorable treatment offered to the witness. 49 S.W.3d 275, 279 (Tenn. 2001) (citing *State v. Smith*, 893 S.W.2d 908, 924 (Tenn. 1994) and *State v. Spurlock*, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993)). The propriety, scope, manner, and control of the cross-examination of witnesses rest within the discretion of the trial court. *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995). This court will not, therefore, disturb a trial court's limits on cross-examination unless we find that the court has placed unreasonable restrictions on that right. *State v. Wyrick*, 62 S.W.3d 751, 770 (Tenn. Crim. App. 2001); *Dishman*, 915 S.W.2d at 463. Although the trial court retains discretion regarding the exercise of the right to examine witnesses for bias, any undue restriction on that right may violate a defendant's right to confrontation under the Sixth Amendment of the United States Constitution and Article I, Section 9, of the Tennessee Constitution. *Sayles*, 49 S.W.3d at 279.

Once a constitutional error has been established, the burden is on the State to prove that the error is harmless beyond a reasonable doubt. *Momon v. State*, 18 S.W.3d 152, 167 (Tenn. 1999). Whether an error is harmless depends upon various factors, including "'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" *Rice*, 184 S.W.3d at 670-71 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

(a) Permitting incarcerated witness to wear street clothes during testimony

Defendant argues that by allowing Ms. Strauss, who was incarcerated at the time of Defendant's trial, to wear street clothes, the trial court allowed the State to create a "false portrayal" of the witness and bolster the witness' credibility. Prior to calling its first witness, the State announced to the trial court that it was going to have Ms. Strauss wear street clothing. Defense counsel objected, and the following exchange occurred:

> [Defense counsel]: Judge, we would ask that she come through the jail
> door and [Defendant] objects to her being in street clothes.

4

THE COURT: Well, [defense counsel], I allow defendants to do that so I don't really see any reason I can't allow a witness to do that, she's subject to cross[-]examination.

Defendant asserts that it was improper to permit the incarcerated witness to borrow nice clothing from the government to wear during testimony. There does not appear to be any case law in Tennessee on this precise issue. In its brief, the State cites an opinion from the Kansas Supreme Court, in which the court examined the case law in other jurisdictions and concluded as follows:

> All of these cases, whether relating to a defendant, witness, or nonwitness being brought into the courtroom in jail clothing, are expressly or impliedly critical of the practice. We agree with this criticism and conclude, in the first step of our analysis, that given the consensus in the case law that jail clothing taints a trial, a trial court almost always abuses its discretion to control the courtroom when it allows a defendant, witness, or nonwitness to be brought before a jury in jail clothing without an articulated justification explaining why it is necessary for the person to wear jail clothing and does not consider giving an admonition or instruction to the jury that it should not consider the clothing or the person's incarceration.

*State v. Ward*, 256 P.3d 801, 824 (Kan. 2011).

We conclude that Defendant's constitutional rights were not violated by the trial court's decision to allow an incarcerated State's witness to wear street clothes while giving her testimony. In fact, both the State and a defendant in a criminal trial are entitled to have incarcerated witnesses wear street clothes while giving testimony. We fail to see how Defendant was prejudiced by the physical appearance of the witness at trial.

(b) Limitation on cross-examination

The State argued a motion in limine asking that defense counsel not be permitted to cross-examine Ms. Strauss about her pending criminal charge. The prosecutor argued:

> Judge, we would ask there be no mention unless [Ms.] Strauss herself – she actually has a pending A-felony drug case, but that said, she has no prior convictions, nothing to do with any type of lying or untruth and we would ask no mention of that be done and we certainly won't

5

attempt to open the door, but we would ask that no mention of it be done on cross[-]examination. It's not relevant to this.

The trial court ruled as follows:

> Well, but with regard to whether or not there's any deal that's been made or any promises for any kind of thing for purposes of her testimony, I think that is relevant and does go to bias. I mean she can say no, but I don't think that I can preclude [defense counsel] from asking if she's got anything that would influence her ability to testify.

> Now, we're not going to get into the facts of what kind of case she's got or anything like that. But I think the fact that she's got a matter that's pending in the courts right now is relevant and that she – you know, has there been any offers made by [the State] in exchange for her testimony, I think is relevant to go to her bias.

The State informed the court that Ms. Strauss had not yet been indicted, and the trial court stated,

> Well, I think, [defense counsel], in light of that, that I don't really know what she's going to be charged with, I think it would be proper that you can question her about [the fact that] she has pending charges in these courts and she could be facing substantial time and has she made any deals with the State in exchange for her testimony.

> But to get into the fact that they're Class A [f]elonies, they may not be. I don't know what they will do when they indict.

Ms. Strauss acknowledged on cross-examination that she was facing a "serious" criminal charge and if convicted, she would serve a "substantial amount of jail time," between 15 and 25 years. She also acknowledged that her case was scheduled for the following day, but she testified that she had no agreement with the State in exchange for her testimony. The trial court erred by prohibiting Defendant from naming the offense for which Ms. Strauss was charged. It does not matter that she had not yet been indicted. She was in jail in lieu of bond, charged with a Class A felony by the State, which was also prosecuting Defendant. It is a close case as to whether the error is harmless, but considering the evidence and the information that the trial court did allow Defendant to mention, we conclude the error was harmless beyond a reasonable doubt. *See State v. Rice*, 184 S.W.3d 646, 670-71 (Tenn. 2006) (Whether an error is harmless depends upon various factors, including "'the importance of the witness' testimony in the prosecution's

6

case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

*Closing argument*

Defendant contends that the prosecutor engaged in improper closing argument by misstating the evidence, by attempting to inflame the passions or prejudices of the jury, by "implicitly" commenting on Defendant's decision not to testify, and by vouching for the credibility of the State's witness. Defendant acknowledges that she failed to contemporaneously object and asks this court to consider the issue under a plain error analysis.

Defendant has raised this issue for the first time on appeal. Defendant failed to object at trial to any of the prosecutor's statements during closing argument about which she now complains. Defendant also failed to raise this issue in her motion for new trial. On the issue of failure to make a contemporaneous objection, our supreme court has stated:

> [W]e stress that it is incumbent upon defense counsel to object contemporaneously whenever it deems the prosecution to be making improper argument. A contemporaneous objection provides the trial court with an opportunity to assess the State's argument and to caution the prosecution and issue a curative instruction to the jury if necessary.

*State v. Jordan*, 325 S.W.3d 1, 57–58 (Tenn. 2010) (footnote omitted). Defense counsel's failure to object contemporaneously will typically result in waiver of the issue on appeal. *Id*. at 58; Tenn. R. App. P. 36(a) (providing that an appellate court need not grant relief where the complaining party failed to take reasonable available action to prevent or nullify an error). Additionally, "no issue presented for review shall be predicated [on] . . . [a] ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial." Tenn. R. App. P. 3(e). Accordingly, we conclude that Defendant has waived consideration of the issue.

*Sufficiency of the evidence*

We note that in Defendant's brief, her statement of the issues presented includes the issue of "whether the evidence was sufficient to support the verdict[.]" However, Defendant fails to raise this issue anywhere in the argument section of her brief. "Issues which are not supported by argument, citation to authorities, or appropriate references to

7

the record will be treated as waived in this court." Tenn. R. Ct. Crim. P. 10(b); *see also* Tenn. R. App. P. 27(a)(7) (stating that the appellant's brief must contain an argument "setting forth . . . the contentions of the appellant with respect to the issues presented, and the reasons therefor . . . with citations to the authorities . . . relied on"). Because Defendant failed to comply with these rules, she has waived our consideration of this issue.

CONCLUSION

Based on the foregoing analysis, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE