IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 25, 2020 Session

**STATE OF TENNESSEE v. LARREAL BROWN and RANDALL ROWLAND**

**Appeal from the Criminal Court for Shelby County**
**No. 17-00812          Lee V. Coffee, Judge**

_____

**No. W2018-02128-CCA-R3-CD**

_____

After a joint trial, a Shelby County jury found the defendants, Larreal Brown and Randall Rowland, guilty of especially aggravated kidnapping (Count 1), aggravated rape (Counts 2, 3, and 4), aggravated robbery (Count 5), and aggravated assault while acting in concert with two or more others (Count 6). The trial court imposed effective sentences of 120 and 71 years in confinement, respectively. On appeal, Defendant Brown asserts the trial court improperly limited his ability to cross-examine Gage Caulk, a co-defendant, regarding Mr. Caulk's sentencing exposure, and Defendant Rowland argues the trial court erred by excluding prior inconsistent statements made by the victim and contained in a police report. After our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J, and CAMILLE R. MCMULLEN, J., joined.

Robert Golder, Memphis, Tennessee (at trial and on appeal) and Brett B. Stein, Memphis, Tennessee (at trial), for the appellant, Larreal Brown.

Ben Israel, Memphis, Tennessee (on appeal) and Monica Timmerman, Bartlett, Tennessee (at trial), for the appellant, Randall Rowland.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Austin Scofield and Leslie Fouche, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## *Facts and Procedural History*

The convictions in this case stem from the brutal torture the victim, D. K.[1], endured between August 29 and 30, 2016, at the hands of the defendants and their co-defendants, Gage Caulk and John Richardson. For their actions, a Shelby County Grand Jury issued a joint indictment against the four defendants for one count of especially aggravated kidnapping (Count 1), three counts of aggravated rape (Counts 2, 3, and 4), one count of especially aggravated robbery (Count 5), and one count of aggravated assault while acting in concert with two or more others (Count 6). Defendants Brown and Rowland proceeded to trial in July 2018, where the following facts emerged.

On August 29, 2016, prior to the crimes at issue, the victim purchased methamphetamine from Defendant Rowland and smoked the drugs with Co-defendant Caulk and Defendant Brown at Co-defendant's Caulk's home. That day, the victim also used Xanax and heroin, noting at the time, he was a heavy drug user and had recently left a rehabilitation program. After getting high, Defendant Brown, whom the victim met that day, dropped the victim off at a friend's house, and the victim went with his friend to a gas station. Upon returning from the gas station, three men, including the defendants, grabbed the victim and forced him into a vehicle. Defendant Rowland kicked the victim and demanded to know "where the drugs were" before knocking the victim unconscious. The defendants also placed a rope around the victim's neck and strangled him.

When the victim woke, he was back at the Co-defendant Caulk's house and being drug into a back bedroom by Defendant Rowland. The victim saw Defendant Brown in the room but was unsure if Co-defendant Caulk was there. The defendants stripped the victim of his clothes, cell phone, and Xanax prescription, forced the victim onto his stomach on a mattress on the floor, and "hog-tied" the victim by tying his hands to his feet behind his back. While in this position, the victim struggled to breathe as the defendants beat him, demanded to know where "the drugs" were located, and threatened to kill him and his grandparents. At trial, the victim explained Defendant Rowland believed the victim stole his drugs earlier that day.

The defendants moved the victim into a bathtub and continued to threaten him by placing a knife to his throat and asking where the drugs were. As a result, the victim fabricated a location, and Defendant Brown and Co-defendants Caulk and Richardson left

---

[1] It is the policy of this Court to refer to victims of sexual abuse by their initials. For the purposes of this opinion, "the victim" will refer to D.K. unless otherwise noted.

the home to look for the drugs. Defendant Rowland remained with the victim. When the defendants were unable to locate the drugs, they returned to the house.

The beating and torture continued throughout the night during which the victim passed in and out of consciousness. As a result, the victim was unable to recall every detail of the torture but stated the defendants continued to punch, kick, and hit him throughout the same. Further, the victim stated Defendant Rowland raped him twice with "[s]ome type of stick." During cross-examination, the victim testified that both of the defendants raped him with a wooden object as he was hog-tied on the mattress and that he thought he was tied to a chair during the second rape. Defendant Brown drilled two holes into the victim's right hand. Pliers were used to twist, squeeze, and pull the victim's fingers and toes, though the victim could not recall who committed those acts. Co-defendant Richardson burned the victim's left thigh with a clothing iron and used a straightening iron to burn other portions of the victim's leg. Co-defendant Richardson also burned the victim's testicles with a lighter and cut the victim's penis with nail clippers. The victim stated the defendants were present during Co-defendant Richardson's acts. Throughout his testimony, the victim identified himself in several photographs depicting the injuries he suffered.

After approximately ten hours of torture, the defendants gave the victim some clothes and forced him into a vehicle. The defendants, however, did not return the victim's clothes or his cell phone. The victim stated an unknown female drove the vehicle, and he recalled Defendant Rowland and Co-defendant Caulk, who had a knife, were inside the vehicle. Before exiting the vehicle, Defendant Rowland told the victim to find the drugs and threatened to kill the victim's family if he called the police.

The victim's eyes were swollen almost entirely shut as he walked away from the vehicle. Felicia Hudson saw the victim walking, picked him up, and drove him to the hospital. At trial, Ms. Hudson explained she saw the victim on the side of the road and noticed his face was swollen and bloodied, he was not wearing shoes, and he was in pain. As she drove him to the hospital, the victim told Ms. Hudson his name and stated he was worried about his family.

The victim described the pain he experienced as excruciating and testified he remained in the hospital for two to three days though the burns he suffered took months to heal. Law enforcement officers visited the victim in the hospital, but the victim told the officers that he did not want to speak to them because he did not "want to get [his] family involved." The victim admitted he could not specify who committed every act against him but confirmed Defendant Rowland, Defendant Brown, and Co-defendant Richardson committed the violent acts. The victim explained his lapse in memory during the crimes resulted from him being "knocked out" rather than from drug usage.

When asked about his prior statements during cross-examination, the victim denied telling Ms. Hudson that his family members committed the crimes against him and did not recall telling Detective Wyatt that he did not know who committed the crimes. Instead, the victim again explained he did not want to talk to police officers because he did not want his family to be involved. In addition, the victim did not recall giving a statement to Detective Schmidt and Sergeant Finch on September 1, 2016, until he reviewed the statement. The victim then confirmed he told police that Defendant Brown cut the left side of his face with a knife, put a knife to his throat, and put duct tape around his mouth. The defendants moved the victim to the bathtub where Defendant Brown drilled holes in the victim's hands with a power drill. The victim could not confirm whether he was raped in the bathtub but believed he was raped again after being removed from the bathtub. The victim stated the defendants burned him prior to putting him in the bathtub and noted throughout the torture, a bag was placed over his head numerous times. The victim also acknowledged a 2015 conviction for auto burglary and a 2017 theft conviction.

Co-defendant Caulk testified regarding his involvement in the crimes committed against the victim and confirmed he had not been promised anything by the State in exchange for his testimony. On August 29, 2016, Defendant Rowland sold methamphetamine to the victim at Co-defendant Caulk's home. After the sale, Defendant Rowland left the house and the victim and Co-defendant Caulk used the drugs. Co-defendant Caulk explained the victim was "a known thief," and he did not want to leave the victim alone at the house as a result. As the day progressed, however, Co-defendant Caulk and the victim left the home at different times.

Around 8:30 or 9:00 p.m., Defendant Brown called Co-defendant Caulk and stated, "I need your help with something." Upon returning to the house, Co-defendant Caulk saw Co-defendant Richardson in the kitchen. In the bathroom, Co-defendant Caulk saw the victim, who was unrecognizable but for his tattoos, "sitting in the tub beaten." The defendants were also in the bathroom. Co-defendant Caulk learned that Defendant Rowland believed the victim stole drugs from him and that in an effort to get the drugs back, the defendants "had burned [the victim] with an iron, and they had raped [the victim] with a stick, [and] beaten [the victim]." Co-defendant Caulk tried to leave, but the defendants prevented him from doing so both physically and through verbal threats. Specifically, Defendant Brown threatened to kill Co-defendant Caulk and his family. Because he felt threatened, Co-defendant Caulk joined the defendants in the bedroom after they removed the victim from the bathtub.

For approximately one hour, Co-defendant Caulk participated in and watched the torture of the victim. Specifically, Co-defendant Caulk witnessed the defendants rape the victim's anus with a small baseball bat "[a] couple of times each," beat the victim with a

bat, and burn the victim with a lighter and clothes iron. In addition, Co-defendant Caulk held a cloth over the victim's face as the defendants "waterboarded" the victim. Co-defendant Caulk stated the victim was tied by a camouflage dog leash during the torture, but he did not see anyone burn the victim with a hair straightener or drill holes into the victim's hands. At one point, Co-defendant Caulk and Defendant Brown left the house to search for the drugs at a location identified by the victim, but they returned to the house when they were unable to locate them. The defendants threatened the victim throughout the encounter stating, "If you don't give me the dope, we'll kill you."

The defendants then moved the victim to a different bedroom and locked Co-defendant Caulk in the original bedroom. Co-defendant Caulk noted he continued to hear the victim screaming throughout the night. During cross-examination, Co-defendant Caulk admitted that the door of the bedroom he was in locked from the inside and that there was a window in the room from which he could have escaped.

The next morning, Defendant Rowland ordered Co-defendant Caulk to untie the victim, who was naked and tied to a chair by blue and white leashes. Co-defendant Caulk complied, cut the leashes with a knife, and gave the victim clothes. Defendant Rowland and Co-defendant Caulk put the victim in a vehicle, and the three men left the house. Co-defendant Caulk sat in the backseat with the victim, and Defendant Rowland told the victim to keep his head down. The victim looked "[b]eaten and battered" and did not have his cell phone. Defendant Rowland ordered the victim out of the car "somewhere in Nutbush." Defendant Rowland and Co-defendant Caulk then bought ammonia and bleach, and Co-defendant Caulk cleaned blood from the floor of the house.

During Co-defendant Caulk's testimony, the State introduced audio recordings of Co-defendant Caulk's jail phone calls which included a three-way call between Co-defendant Caulk, Defendant Brown, and Co-defendant Caulk's girlfriend. The phone call was played, in part, for the jury. During the phone call, Defendant Brown discussed a fake suicide plan, and Co-defendant Caulk commented that it was not Defendant Brown's "dope" that was stolen.

On cross-examination, Co-defendant Caulk denied he was attempting to minimize his involvement in the crimes. As he was questioned by counsel for Defendant Brown, Co-defendant Caulk admitted to a prior theft conviction and that he was indicted in the present case. Defense counsel then asked Co-defendant Caulk: "And if you were convicted of this, you'd be looking at a hell of a lot of time?" The State objected, and the trial court sustained the objection. Further, Co-defendant Caulk denied being a victim of the crimes and stated though he "was really scared to leave," he was "not really trapped" in the home. Regarding his participation in the crimes, Co-defendant Caulk admitted, "I held the cloth

over [the victim's] face while they water boarded and in his mouth while they raped and burned him with the iron."

Several officers from the Memphis Police Department investigated the crimes committed against the victim. Officer Robert Wyatt responded to the hospital on August 30, 2016, and spoke to the victim in the emergency department. Officer Wyatt stated the victim's face was distorted and swollen, he was covered in bandages, and he had marks on his neck. During their interaction, the victim was not cooperative and did not want to file a police report or provide any information to Officer Wyatt. As a result, Officer Wyatt spoke to medical staff but noted the victim eventually cooperated with the investigation. Officer Wyatt documented his findings in a police report. During cross-examination, Officer Wyatt explained the police report detailed his conversations in the hospital, including the victim's narrative of the events which led to his injuries, and stated the victim did not disclose who committed the crimes against him at that time.

Sergeant Pickering also responded to the hospital and took photographs of the victim. The photographs, which were entered into evidence and described to the jury, showed that the victim had been severely beaten and suffered "extensive" injuries. Sergeant Pickering noted the victim's face was "badly swollen," he was unable to open his eyes, his left leg was bandaged and burned, and he was "pretty much bruised all over." Sergeant Pickering identified ligature marks on the victim's lower arm and wrist which were likely caused in an effort to remove a restraint and noted an injury to the victim's hand which was caused by a drill, according to the victim.

Officer David Payment of the Crime Scene Investigation Unit photographed and collected evidence from the house. Photographs depicting the interior and exterior of the home were admitted into evidence and displayed for the jury. The photographs included images of a wooden stick, a leash, a towel, and a fitted sheet. Both the towel and sheet had brown and/or red stains and had been soaked in bleach. In a garbage can found outside the home, Officer Payment collected a broken broom stick, three white and blue nylon knotted ropes, and a cell phone. The broom stick and ropes were entered into evidence along with a broken, wooden tire tester.

Investigator Aaron Kant of the Shelby County District Attorney's Office also testified, noting he participated with the investigation since the defendants were indicted. Regarding Defendant Brown, Investigator Kant stated he was arrested in Los Angeles, California and subsequently extradited to Memphis by the Shelby County Sheriff's Department.

Sally Discenza, a nurse and expert in the field of sexual assault examinations, conducted a physical examination of the victim on August 30, 2016, at 8:03 p.m.[2] During the examination, Ms. Discenza photographed the victim's "extensive" injuries which she detailed with particularity at trial. The injuries included: extensive swelling to the victim's face, including bruised eyes that were swollen shut, cigarette burns, knife puncture wounds, swollen and bruised lips, and dried blood in the nostrils; marks consistent with ligature marks to the victim's neck; burn marks throughout the victim's body, most notably on the legs where the skin was "sloughing off;" two puncture wounds consistent with nail clippers to the victim's penis; burn wounds to the victim's scrotum; generalized redness and purple contusions in the victim's anal area; puncture wounds to the victim's toe; ligature markings around the victim's ankles; red, bruised, and swollen arms; superficial lacerations to the top of the victim's foot; a puncture wound to the victim's hand; multiple finger lacerations; lacerations to the victim's chest; and injury to the top of the victim's head. Along with photographing the victim's injuries, Ms. Discenza created multiple diagrams depicting the injuries which were entered into evidence.

After the State rested its case, each defendant made a motion for a judgment of acquittal which was denied by the trial court. Before resting his case, Defendant Rowland indicated his desire to recall Officer Wyatt as a rebuttal witness in order to impeach the victim with statements contained in Officer Wyatt's police report. After discussions with the parties, the trial court ruled the proffered evidence was not admissible but provided Defendant Rowland with the opportunity to create the record for appeal. In doing so, the trial court was prepared to allow Defendant Rowland to recall Officer Wyatt in order to make an offer of proof regarding the police report and the victim's statements allegedly contained within the report. Defendant Rowland, however, chose to mark Officer Wyatt's police report for identification for the record. As such, Officer Wyatt did not testify, the defendants did not present any additional proof, and the jury convicted the defendants of especially aggravated kidnapping, as charged in Count 1; aggravated rape, as charged in Counts 2, 3, and 4; aggravated robbery, as included in Count 5; and aggravated assault acting in concert with two or more others, as charged in Count 6. After separate sentencing hearings, the trial court imposed an effective sentence of 120 years against Defendant Brown and 71 years against Defendant Rowland. The defendants filed motions for new trial which were denied by the trial court. This Court consolidated their timely appeals.

### Analysis

The defendants present separate and distinct issues for our review on appeal. We will address each in turn.

---

[2] Prior to Ms. Discenza's testimony, the parties entered a stipulation into evidence regarding the DNA evidence collected during the investigation.

## I.    *Defendant Brown*

Defendant Brown argues the trial court erred by limiting his ability to fully cross-examine Co-defendant Caulk regarding Co-defendant Caulk's potential sentencing exposure in violation of both the state and federal constitutions.  U.S. Const. amend. VI.; Tenn. Const. art. I, § 9.  He asserts "[t]he inconsistencies within [Co-defendant] Caulk's testimony and between the testimonies of [Co-defendant] Caulk and [the victim] become more resonant when developed in the context of [Co-defendant] Caulk's motivation to lie." The State asserts the trial court did not abuse its discretion in limiting the cross-examination of Co-defendant Caulk and any alleged error was harmless because the evidence was sufficient to support the jury's verdicts and "[t]he jury was aware that [Co-Defendant] Caulk was culpable in the crimes and was seeking favor with the State by testifying against the defendants.".[3]  Upon our review of the record and the applicable law, we agree with the State.

It is well-settled that "[t]he right to explore or examine witnesses for bias is a fundamental right."  *State v. Sayles*, 49 S.W.3d 275, 279 (Tenn. 2001) (citation omitted). "The propriety, scope, manner and control of the cross-examination of witnesses, however, rests within the discretion of the trial court."  *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995) (citations omitted).  This Court will uphold the trial court's determination absent an abuse of discretion.  *Sayles*, 49 S.W.3d at 279.

Here, the record indicates the trial court properly limited Defendant Brown's cross-examination of Co-Defendant Caulk pursuant to Tennessee Code Annotated section 40-35-201(b).  The applicable code section provides: "In all contested criminal cases . . .  the judge shall not instruct the jury, nor shall the attorneys be permitted to comment at any time to the jury, on possible penalties for the offense charged nor all lesser[-]included offenses."  Tenn. Code Ann. § 40-35-201(b).  Prior to the limitation at issue, the trial court allowed Defendant Brown to explore Co-defendant Caulk's potential bias.  As a result, Co-defendant Caulk admitted he was indicted for the same crimes as the defendants, detailed his participation in the crimes, and explained why he chose to testify on behalf of the State, which included his hope for a better deal for himself.  With this foundation laid, counsel for Defendant Brown asked, "And if you were convicted of this, you'd be looking at a hell of a lot of time?"  The State objected, arguing the question was improper.  The trial court sustained the objection and ordered the jury to disregard the question.  In denying Defendant Brown's motion for new trial as to this issue, the trial court stated:

---

[3] The State also contends Defendant Brown has waived consideration of this issue for only raising the issue as an evidentiary issue and not a constitutional one.  However, because the defendant is not entitled to relief on the merits of his claim, we will not address the merits of the State's waiver argument.

[Co-defendant] Caulk, in fact, was questioned. He was questioned about the fact that he does have cases pending. He was questioned about the fact that his cases are still pending. Was questioned about the fact as to whether or not he had any motive to testify truthfully or testify untruthfully. Was questioned extensively on cross-examination. [Co-defendant] Caulk's lawyer was, in fact, present in court during that colloquy, []. And was asked whether or not he was hoping for lesser sentences. [Co-defendant] Caulk answered that he was, in fact, hoping for a lesser sentences (sic).

"And was it important to minimize your involvement?"

And [Co-defendant] Caulk answered that question no, it was not important; that he decided to testify for the State a couple of weeks ago; and that his cases were, in fact, still pending; and he had not entered a guilty plea; and he was charged as a co-defendant. So this jury knew that [Co-defendant] Caulk was charged with exactly the same thing that [Defendant] Rowland and [Defendant] Brown were charged with.

It is improper. It is illegal. It is something that the [c]ourt cannot do, nor can I allow the lawyers to ever tell a jury what the range of punishment is. Because if [Co-defendant] Caulk was asked about his range of punishment, if convicted, necessarily it tells the jury this is the same punishment that [Defendants] Brown and [] Rowland are facing. And that would ask the jury to make a decision based on perhaps an emotional basis, rather than a factual, legal basis. This [c]ourt followed the law and did not allow anybody to tell the jury what the range of punishment was for these offenses that these three defendants, [Defendant] Brown and [Defendant] Rowland, who were at trial, and [Co-defendant] Caulk, who decided to testify a few weeks before trial.

Upon our review, we agree with the ruling of the trial court. The record indicates that throughout Co-defendant Caulk's testimony, the trial court allowed each party to elicit testimony from Co-defendant Caulk regarding his participation in the crimes and explore his potential bias. However, when counsel for Defendant Brown questioned Co-defendant Caulk about his potential sentencing exposure, the trial court limited the cross-examination in an effort to avoid violating Tennessee Code Annotated section 40-35-201(b). Because the jury was aware that the defendants and Co-defendant Caulk faced the same charges, any further discussion about Co-defendant Caulk's sentencing exposure would have, in effect, made the jury aware of the defendants' potential sentencing exposure in violation of Tennessee Code Annotated section 40-35-201(b). Therefore, the trial court properly limited Defendant Brown's cross-examination of Co-defendant Caulk regarding Co-defendant Caulk's sentencing exposure. The defendant is not entitled to relief.

## II. *Defendant Rowland*

Defendant Rowland argues the trial court committed reversible error by excluding "all testimony" regarding prior inconsistent statements made by the victim and contained within Officer Wyatt's police report in violation of Rules 613, 801(c), and 803 of the Tennessee Rules of Evidence. In support, Defendant Rowland asserts the victim's statements were not hearsay but "extremely relevant impeachment evidence admissible pursuant to Rule 613 of the Tennessee Rules of Evidence" and further argues the trial court's exclusion of the statements "violated traditional canons of statutory interpretation," was contrary to case law, and limited his ability to impeach the victim which resulted in a violation of the confrontation clause. The State asserts "[Defendant] Rowland's motion for new trial does not make clear that he presented the issue as both an evidentiary one and under the confrontation clause," Defendant Rowland "failed to comply with the requirements for impeachment," and any alleged error was harmless beyond a reasonable doubt as this was an evidentiary issue which rested within the trial court's sound discretion.

Initially, we also note, the State asserts this issue is waived as Defendant Rowland failed to mark Officer Wyatt's August 30, 2016, police report for identification for the record. We, however, disagree as the appellate record has been properly supplemented to include the police report at issue by order of the trial court and pursuant to Rule 24 of the Tennessee Rules of Appellate Procedure.

Though the police report is satisfactorily contained in the record, we must still address whether the issue is properly before this Court. During his testimony, Officer Wyatt explained the victim did not disclose who attacked him during their conversation at the hospital on August 30, 2016, and that he documented his findings in a police report. In contrast, the victim testified he did not recall telling Officer Wyatt that he did not know who his attackers were during their conversation. Separately, and in contrast to the police report, the victim also testified that he did not recall discussing the location of the defendants' initial attack with Officer Wyatt. After the State rested its case, Defendant Rowland sought to recall Officer Wyatt in rebuttal in order to impeach the victim with these inconsistencies. The trial court ruled the proposed evidence was inadmissible but provided Defendant Rowland with the opportunity to recall Officer Wyatt in order to make an offer of proof regarding the victim's alleged, inconsistent statements. When Officer Wyatt was uncooperative, the trial court offered to order his return to court. Defendant Rowland declined, and Officer Wyatt did not testify regarding the contents of the police report. Instead, Defendant Rowland marked the police report for identification in an effort to preserve the issue for appeal. No additional offer of proof was made. This Court, however, cannot presume what Officer Wyatt's testimony would have been regarding the proposed evidence. Because the record is incomplete as it relates to this issue, we cannot

review the trial court's ruling regarding the admissibility of the proposed evidence. Accordingly, the issue is waived, and the defendant is not entitled to relief. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Regardless, the record makes clear the inconsistencies at issue were presented to the jury during the testimonies of the victim and Officer Wyatt. As noted, the victim denied telling Officer Wyatt that he did not know who his attackers were and Officer Wyatt testified the victim did not disclose who attacked him during their conversation on August 30, 2019. The victim explained he did not initially disclose any information to Officer Wyatt because he feared the defendants might retaliate against his family. The victim, however, eventually cooperated with law enforcement and identified the defendants. Additionally, at trial, the victim readily admitted he did not recall every detail from his attack and noted he may have described the events differently at various times. Accordingly, any alleged error regarding this evidentiary issue was harmless as the victim admitted to making inconsistent statements and being unable to recall every detail of the crimes committed against him. The defendant is not entitled to relief.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
J. ROSS DYER, JUDGE

- 11 -